**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION–COLUMBUS**

| | |
|---|---|
| BRENDA KRIVATCH, on behalf of themselves and others similarly situated,<br><br>Plaintiff.<br>v.<br><br>SWEEPSTEAKS LIMITED, d/b/a Stake.us<br><br>Defendant. | Case No. 2:26-cv-00132-EAS-CMV<br><br>Judge Edmund A. Sargus, Jr.<br><br>Magistrate Judge Chelsey M. Vascura |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

1

## **Contents**

INTRODUCTION ........................................................................................................................... 3

FACTUAL BACKGROUND ........................................................................................................ 4

ARGUMENT ................................................................................................................................. 6

    I.    Plaintiff cannot recover under the Ohio Loss Recovery Statute because she fails to plausibly allege a winner or a loser as determined by a game. ................................................. 6

        A.    Sweepsteaks Limited is not a "winner" under the OLRS. .............................................. 7

        B.    Plaintiff may have spent money, but she has not "lost" anything under the OLRS........ 9

        C.    Plaintiff's purchase of virtual coins and use of those coins is not a loss incurred "by playing a game." ........................................................................................................................11

    II.    Plaintiff has failed to plausibly allege that Sweepsteaks Limited's conduct was unfair or deceptive under the Ohio Consumer Sales Practices Act. ..................................................... 12

    III.    Plaintiff failed to plausibly allege "gambling" under Ohio law and thus cannot recover through declaratory judgement and disgorgement. ...................................................... 16

CONCLUSION ............................................................................................................................. 21

**INTRODUCTION**

Ohio law very specifically defines what is and what is not illegal gambling. Under Ohio statute, "gambling" and "game of chance" are defined terms of art which do not apply to all games with an element of chance. Further, Ohio case law excludes no-purchase-necessary sweepstakes, like those that well-known consumer brands, grocery stores, and fast-food restaurants offer to residents every day.

Sweepsteaks Limited's website, Stake.us (the "Platform"), is a new spin on these long-established models. The Platform works like this. Users purchase virtual coins called "Gold Coins" to play casino-style games including slots, roulette, and blackjack. Gold Coins have no real-world value and can only be used to play what are commonly referred to as "social casino" games on the Platform. When a user wins additional Gold Coins, they can only use them to continue playing games on the Platform. Sometimes, when users purchase Gold Coins, they also receive sweepstakes entries referred to as "Stake Cash" as a free, promotional bonus. Unlike Gold Coins, if a user plays a game using Stake Cash and wins, they can redeem their Stake Cash for prizes with real-world value.

While users may purchase Gold Coins, they can never purchase Stake Cash. Like a traditional sweepstakes, users may receive Stake Cash as a free, promotional bonus with their purchase of Gold Coins or through a number of other no-purchase-necessary promotional methods. In other words, to promote its product—the social casino games—Sweepsteaks Limited offers a sweepstakes in which users have the chance to win real-world prizes. Sweepsteaks Limited is not alone in doing so. Thousands of businesses across the country do the same thing every day.

Plaintiff tries to cast Sweepsteaks Limited's platform as something more nefarious. In her view, the Platform's sweepstakes are unlawful gambling in disguise. As a result, she claims that she—and putative classes of Platform users in Ohio—are entitled to a declaratory judgment and

3

to recover under the Ohio Consumer Sales Practices Act and the Ohio Loss Recovery Statute. But her allegations do not support these claims.

As described in Plaintiff's complaint, the Platform's games fall within two well-recognized exceptions to Ohio prohibition of gambling: games that provide amusement but award only additional free play and no-purchase-necessary sweepstakes. There is also nothing unfair about how the Platform operates. Sweepsteaks Limited is transparent about the Platform, the games it offers, and how users can obtain, use, and win Gold Coins and Stake Cash. Plaintiff received exactly what she paid for when she purchased Gold Coins: the opportunity to play entertaining social casino-style games. And sometimes, as a free bonus, she received free sweepstakes entries in the form of Stake Cash. There is nothing unfair about that.

The Platform's social casino games offer entertaining social gameplay, and Sweepsteaks Limited promotes this product through a no-purchase-necessary sweepstakes. Neither aspect of the Platform violates Ohio gambling law. Nothing about the Platform itself or Sweepsteaks Limited's marketing of it is unfair. And there is nothing unfair about Sweepsteaks Limited keeping the money users like Plaintiff paid to play the games. The Court should therefore dismiss the complaint in its entirety.

## FACTUAL BACKGROUND

Sweepsteaks Limited's platform, Stake.us, allows users to play entertaining social casino-style games using two distinct virtual tokens: Gold Coins and Stake Cash. See Compl. ¶¶ 72–73, ECF No. 1, at PageID 14. Gold Coins are a virtual token with no real-world value. *Id.* Stake Cash is a virtual token that can be used to enter the Platform's sweepstakes and ultimately redeemed for prizes with monetary value. *Id.* Players may obtain Gold Coins through various promotional methods including, for example, daily login bonuses. *See* Declaration of Jarrod Febbraio,

4

("Febbraio Decl.") Ex. A ("Terms and Conditions").[1] Alternatively, users may purchase Gold Coins. Compl. ¶ 76 fig., ECF No. 1, at PageID 15. Users may acquire Stake Cash for free through several promotional methods, including a daily login bonus and by sending a request to Sweepsteaks Limited by mail. *See id.* ¶¶ 76, 88, 132, PageID 15, 18, 25; Terms and Conditions § 8.2. Users may also receive free Stake Cash as a bonus when they purchase certain Gold Coin packages. *See* Compl. ¶ 73, ECF No. 1, at PageID 14. Alternatively, users may purchase Gold Coin packages that do not offer bonus Stake Cash. *See id.* ¶ 76 fig, Page ID 15.

Both Gold Coins and Stake Cash allow users to play a wide range of casino-style games including slots, roulette, and blackjack. Compl. ¶¶ 72–73, PageID 14. When a user plays with Gold Coins, they win or lose only Gold Coins. *Id.* ¶ 72. Players can choose to play games with Gold Coins in "Standard Play" or with Stake Cash in "Promotional Play." *Id.* ¶¶ 72–73. Playing with Stake Cash allows users to win prizes redeemable for cryptocurrency. *See id.* ¶¶ 73, 84, PageID 14, 17. When users wish to return to Gold Coin play, they can simply switch back to playing with Gold Coins. *See id.* ¶¶ 72–73, PageID 14; Terms and Conditions §§ 10–11.

Like many businesses, Sweepsteaks Limited promotes the Platform through social media campaigns on Instagram and other sites. *See* Compl. ¶ 51, PageID 9. Influencers, celebrities, and athletes have also promoted the Platform on social media and streaming platforms. *Id.*

Plaintiff alleges that she used Stake at some point in the past and lost "money and/or property." *Id.* ¶ 17, PageID 3. She seeks a declaratory judgment that Stake.us is "illegal gambling,"

---

[1] The Court may rely on the complete Terms and Conditions without converting this motion into a motion for summary judgment under Federal Rule of Civil Procedure 12(d) because Plaintiff refers to the Terms and Conditions throughout her Complaint, *see, e.g.*, Compl. ¶¶ 96, 101–102, 104–106, ECF No. 1, at PageID 20–21, there can be no dispute that they are authentic, *see* Febbraio Decl., and the Terms and Conditions are central to Plaintiff's claims because they govern how users like Plaintiff may play the Platform's games, and Plaintiff refers to and quotes the Terms and Conditions. *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008), quoting *Greenberg v. Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir.1999) ("a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims").

a permanent injunction, and disgorgement of profits. *Id.* ¶¶ 124–135, PageID 25–26. Further, referring to these purchases as gambling losses, Plaintiff alleges that she is entitled to void the Terms and Conditions and the Arbitration Agreement and recover the money she spent under the Ohio Loss Recovery Statute. *See id.* ¶¶ 104, 136–143, PageID 21, 26–27. She also alleges that Sweepsteaks Limited violated the Ohio Consumer Sales Practices Act through misleading marketing and operation of the Platform. *Id.* ¶¶ 144–161, PageID 27–30.

## ARGUMENT

The Court must dismiss all three of Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bruce v. Adams and Reese, LLP*, 168 F.4th 367, 375 (6th Cir. 2026), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must accept as true all factual allegations contained in the complaint, it need not presume the truth of legal conclusions or conclusory allegations that merely recite the elements of the claim. *Bates v. Green Farms Condominium Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020).

I. **Plaintiff cannot recover under the Ohio Loss Recovery Statute because she fails to plausibly allege a winner or a loser as determined by a game.**

Under the Ohio Loss Recovery Statute, Ohio Rev. Code § 3763.02 *et seq.*, ("OLRS")

> [i]f a person, *by playing a game*, or by a wager, *loses to another*, money or other thing of value, and pays or delivers it or a part thereof, *to the winner thereof*, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, *from the winner thereof*, with costs of suit.

6

(emphasis added). Like similar statutes in other states, Ohio's expansive gambling loss recovery statutes are relics of a time when civil law was the prevailing method to prevent public vices. *See Burt v. Playtika Ltd.*, 132 F.4th 398, 402 (6th Cir. 2025), citing *Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir.1997) and *Salamon v. Taft Broad. Co.*, 16 Ohio App.3d 336, 341 (1984). To state a claim under § 3763.02, Plaintiff must "allege that the defendant is indebted to the plaintiff for . . . the money *so lost* and paid, or [has] converted the goods *won* of the plaintiff to the defendant's use." Ohio Rev. Code § 3763.03 (emphasis added). The potential statutory resolution further emphasizes the necessary element of a "winner." *See id.* § 3763.05 ("Upon discovery and repayment of the money or other thing, the person discovering and repaying it . . . shall be acquitted and discharged from further punishment . . . for winning such money . . . ."). Accordingly, to state a claim under the OLRS, a plaintiff must plausibly allege (1) a winner and (2) a loser (3) determined by playing a game. *See id.* § 3763.02. Plaintiff plausibly alleges none of these elements.

### A. Sweepsteaks Limited is not a "winner" under the OLRS.

Plaintiff's claims under the OLRS fail because Plaintiff has failed to plausibly allege that Sweepsteaks Limited is a "winner" from whom Plaintiff can recover under the OLRS. "A person cannot be a winner under [the OLRS] without risking a loss in a game, wager, or bet." *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1038 (N.D. Cal. 2025) (analyzing several states', including Ohio's, gambling loss recovery laws at once), *app'l pending Custodero, et al. v. Apple Inc.* (9th Cir., Dec. 17, 2025); *see also Salamon*, 16 Ohio App.3d at 340, citing *Marx v. Scott*, 56 Ohio App. 366, 370 (1937) (finding, when analyzing the similarly-worded Ohio Rev. Code § 3763.04, that plaintiff was unable "to prove the requisite elements of the statute, specifically, 'a person' losing money or thing of value 'to another'").

7

Here, as the Complaint makes clear, Plaintiff could only purchase non-redeemable Gold Coins on the Platform. *See* Compl. ¶ 76 fig, ECF No. 1, at PageID 15. Plaintiff does not allege that Sweepsteaks Limited ever put the money received from Gold Coin purchases at risk. *See e.g.*, *id.* ¶ 72, PageID 14 ("When using Gold Coins, a player can only win or lose Gold Coins."). "When Defendants receive their commission from purchases of virtual chips, those commissions are not contingent on the outcome of any slot machine spin, game, wager, or other bet." *In re Apple Inc.*, 806 F. Supp. 3d at 1038, citing *Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 923, 921, 337 Ill. Dec. 67, 921 N.E.2d 1205 (2010).

Where there is no risk that Sweepsteaks Limited will lose the money spent on Gold Coins based on gameplay, Sweepsteaks Limited is not a "winner." *See id.*; *see also* Compl. ¶ 72, ECF No. 1, at PageID 14. While Sweepsteaks Limited may sell fewer Gold Coins to a winning player, the chance of reduced future sales is not the same thing as Sweepsteaks Limited putting its own money at risk. *In re Apple Inc.*, 806 F. Supp. 3d at 1038, citing *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 740 (N.D. Ill. 2016) and *Ristic v. Mach. Zone, Inc.*, No. 15-cv-8996, 2016 WL 4987943, at *3 (N.D. Ill. Sept. 19, 2016). Courts have rejected this argument, and for good reason. *See e.g.*, *Phillips*, 173 F. Supp. 3d at 740. Whatever the risk to future sales might be is "too attenuated from the game[s] at issue, and they are too speculative as well." *In re Apple Inc.*, 806 F. Supp. 3d at 1038.

Further, Plaintiff does not allege that Sweepsteaks Limited is a "winner" on Stake Cash games, as she only alleges that Sweepsteaks Limited received money paid to purchase Gold Coins. *See* Compl. ¶ 98, ECF No. 1, at PageID 20. Since any money Plaintiff allegedly paid was for Gold Coins, the Complaint on its face fails to allege Sweepsteaks Limited was a "winner." At most, she alleges that she, and other Stake.us users, play Stake Cash games for the chance to win prizes. *See*

8

*id.* ¶¶ 10, 11, 129, PageID 2, 25. But in the absence of any allegation suggesting that Sweepsteaks Limited risked a loss in the Stake Cash games, Plaintiff's allegations fall short of alleging that Sweepsteaks Limited is a winner under the OLRS. *See In re Apple Inc.*, 806 F. Supp. 3d at 1037 (OLRS makes clear that a "winner" is one who won a game or bet). Because Sweepsteaks Limited keeps the money a player pays to purchase Gold Coins regardless of whether the user wins or loses, it cannot be a winner under the OLRS.

### B. Plaintiff may have spent money, but she has not "lost" anything under the OLRS.

Plaintiff cannot plausibly allege that she "lost" money under the OLRS. At best, she alleges that she spent money on the Platform.[2]

Plaintiff's allegations treat purchases as equivalent to losses. But when Plaintiff purchased Gold Coins, she was purchasing a service: additional playing time on Gold Coin games. *See Burt*, 132 F.4th at 402; *see also* Compl. ¶¶ 17, 76, PageID 3, 15. In Ohio, receiving the continued ability to play a game is receiving amusement, which is legitimate product. *See Snyder v. City of Alliance*, 41 Ohio App. 48, 54–55, 179 N.E. 426, 428 (1931); *but see infra* n.6. Plaintiff does not plausibly allege that she received anything less. Plaintiff's allegation that she did not use a legitimate product that she bought does not amount to a "loss" under the OLRS. *See* Compl. ¶ 85, ECF No. 1, at PageID 17. She therefore did not lose anything when she purchased Gold Coins. *See id.*; *see also Humphrey v. Viacom, Inc.*, No. 06-2768, 2007 WL 1797648, at *10 (D.N.J. June 20, 2007)

---

[2] Plaintiff alleges that she and Class members "each wagered money or other things of value" on the Platform, and that she "paid . . . money or other things of value" on the Platform. Compl. ¶¶ 15, 17, 140, ECF No. 1, at PageID 3, 27. These allegations of a "wager" are legal conclusions that the Court need not take as true. *Bates*, 958 F.3d at 480. Even so, she does not allege what she means by "wager" in this context and "money or other things of value" is a vague restatement of the law, not a specific factual allegation. The only way to pay money to participate in the games on the Platform is to choose to buy Gold Coins to play Gold Coin games. *See id.* ¶ 76, PageID 15. No "other things of value" are alleged in the Complaint. Accordingly, read together with the allegation that "Plaintiff and Class members each paid money or other things of value to Stake[,]" *id.* ¶ 133, PageID 26, *see also, e.g.*, *id.* ¶ 140, PageID 27, Sweepsteaks Limited takes these allegations to mean that Plaintiff is alleging she made a purchase of Gold Coins on the Platform. Otherwise, Plaintiff has not alleged that she made a purchase on the Platform, and, therefore, has not sufficiently alleged that she suffered any injury.

9

(dismissing loss recovery claim in part because fantasy sports participants did not lose anything in paying for the right to participate).

Nor can Plaintiff allege that she lost anything by playing with Stake Cash because she could not and did not pay for Stake Cash. *See* Compl. ¶ 88, ECF No. 1, at PageID 18. At most, she purchased Gold Coins and received free, promotional sweepstakes entries, in the form of Stake Cash, as a bonus. Plaintiff's legal conclusions throughout the Complaint that purchases of Gold Coins are actually "wagers," *see, e.g.*, *id.* ¶ 98, PageID 20, are not tantamount to an allegation she has lost. Because Plaintiff does not plausibly allege that she paid for Stake Cash, she cannot plausibly allege that she "lost" money or another thing of value by playing Stake Cash games.

There is another reason to reject treating money spent to buy Gold Coins as a "loss" under the OLRS. Doing so would lead to far-reaching and absurd results. *See State ex rel. Clay v. Cuyahoga Cnty. Med. Examiner's Off.*, 2017-Ohio-8714, ¶ 22 ("when the General Assembly enacts a statute, it does not intend to produce an absurd result"). If Plaintiff has alleged a loss here, every disappointed sweepstakes participant could sue to recover money spent on a sweepstake sponsor's product. For example, a consumer could buy a hamburger, realize they did not get an instant win in the sweepstakes on the box, and then sue to recover the money spent on the burger. The non-winning sweepstakes entry does not change the fact that the consumer received the hamburger. This result would threaten the well-established no-purchase-necessary sweepstakes that Ohio law excludes from the definition of gambling. *See* 2013 Ohio Atty.Gen.Ops No. 2013-012, at 2-107 (giving an overview of sweepstakes law in Ohio and finding a sweepstakes lawful where no

consideration where persons paid for the purchase of a legitimate product or service, rather than for a chance to win a prize).[3] The Court should decline to read the OLRS this way.

Without a "winner" or a "loser," Plaintiff's allegations that the Platform offers casino-style games is irrelevant. Courts in neighboring states with the same "winner" and "loser" requirements have repeatedly rejected loss recovery claims where, as here, there is no winner or loser even where the games replicate casino-style games. *See e.g.*, *Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*, 810 F.3d 509, 510 (7th Cir. 2016) (rejecting claim against online poker website); *Phillips*, 173 F. Supp. 3d at 739–41 (rejecting claim against social casino website offering simulated slots, roulette, poker, and blackjack). Plaintiff's efforts to tie the Platform to real-money gaming cannot overcome her failure to plausibly allege that Sweepsteaks Limited won and that she lost.

### C.  Plaintiff's purchase of virtual coins and use of those coins is not a loss incurred "by playing a game."

The OLRS requires that the outcome of a game or wager determine a winner and loser for the person who lost to be entitled to recovery. *See* Ohio Rev. Code § 3763.02. However, purchasing virtual coins is neither a game nor a wager. *In re Apple Inc.*, 806 F. Supp. 3d at 1043.[4] Here, Plaintiff can only show that she spent money on the purchase of Gold Coins, which cannot be exchanged for monetary value. Playing games using those coins did not cause her to spend more money, provide any additional revenue to Sweepsteaks Limited, or grant her any right to claim a prize other than more Gold Coins.

---

[3] *See also id.*, citing Ronald J. Rychlak, *Video Gambling Devices*, 37 UCLA L. Rev. 555, 556 (1990) ("[c]onsideration is the stake, wager, or bet that gamblers risk losing if they are unsuccessful"); discussion *infra* of *In re Direct American Marketers, Inc.* Assurance of Voluntary Compliance, Ohio Att'y Gen. PIF 10001626, 3 (Aug. 22, 1996).

[4] The Court in *In re Apple Inc.*, presumed that the transactions at issue were for the purpose of illegal gambling on the basis of assuming plaintiff's allegations to be true for deciding the motion dismiss and because the defendants in that case did not brief the legality of the games. 806 F. Supp. at 1042. Even so, the Court found that purchasing the virtual chips was not a game nor wager and concluded "Plaintiffs have failed to plead recoverable losses under these states' loss recovery statutes." *Id.* at 1043.

To state a claim under the OLRS, Plaintiff must plausibly allege that, by playing a game, she lost and Sweepsteaks Limited won. She has not done so. The Court should therefore dismiss Plaintiff's OLRS claim.

## II. Plaintiff has failed to plausibly allege that Sweepsteaks Limited's conduct was unfair or deceptive under the Ohio Consumer Sales Practices Act.

Next, Plaintiff alleges that Sweepsteaks Limited engaged in unfair and deceptive trade practices under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01. The Court should dismiss this claim because Plaintiff has failed to plausibly allege that Sweepsteaks Limited's conduct was unfair or deceptive as required to state a claim under the OCSPA.

To state a claim under the OCSPA for unfair or deceptive practices, Plaintiff must plausibly allege facts showing that a reasonable consumer would be misled or deceived under the Federal Rules of Procedure Rule 9(b) heightened standards. *See Barlow v. Gap, Inc.*, 2020-Ohio-4382, ¶ 23–24 (8th Dist.), citing *Grgat v. Giant Eagle, Inc.*, 2019-Ohio-4582, ¶ 18 (8th Dist.); *Detrick v. KCS Int'l Inc.*, 781 F. Supp. 3d 588, 622 (N.D. Ohio 2025), *reconsideration denied,* No. 5:24-CV-1154, 2025 WL 1697482 (N.D. Ohio June 17, 2025). A "practice is unfair if it is marked by injustice, partiality, or deception, or it results in inequitable business dealings." *Grace v. Perkins Rest.*, 2025-Ohio-213, ¶¶ 20–21 (7th Dist.), quoting *Walker v. Dominion Homes, Inc.*, 2005-Ohio-6055, ¶ 25 (10th Dist.) (citation omitted). A practice is deceptive if it is "both false and material to the consumer transaction." *Durnell's RV Sales Inc. v. Beckler*, 2023-Ohio-3565, ¶ 40 (3rd Dist.), quoting *Anderson v. Discount Drug Mart, Inc.*, 2021-Ohio-693, ¶ 31 (8th Dist.); *see also Barlow*, 2020-Ohio-4382, ¶ 26, quoting *Grgat*, 2019-Ohio-4582, ¶ 16.

The OCSPA also identifies ten specific representations that are deceptive, including:

12

(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

. . .

(4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;

(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;

. . .

(9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have[.]

Ohio Rev. Code § 1345.02(B).

Further, to state a claim under OCSPA where the allegations of the Complaint "sound in fraud," Plaintiff's OCSPA claims must be analyzed "under the heightened pleading standard of [Fed. Rules Civ. P.] Rule 9(b)." *Detrick*, 781 F. Supp. 3d at 622; *see* Compl. ¶¶ 151, 158, ECF No. 1, at PageID 28–29; *see also id.* ¶ 111, PageID 21 (explicitly alleging fraud on the basis of misrepresentation). In *Detrick*, the Northern District applied the heightened Rule 9(b) standard when the plaintiffs alleged that they relied on misrepresentation by defendant to plaintiffs' detriment and further alleged that this entitled them to relief under OCSPA. *See* 781 F. Supp. 3d at 621–622. Here, in her OCSPA claims, Plaintiff has not only alleged that she detrimentally relied on alleged misrepresentations, but she has specifically invoked fraud as the underlying activity. Compl. ¶¶ 111, 151, 158, ECF No. 1, at PageID 21, 28–29; *see also Detrick*, 781 F. Supp. at 622 ("fraud neatly overlaps with the cause of action the OCSPA creates"). Accordingly, the heightened Rule 9(b) pleading standard should apply.

Under Rule 9(b), "the [P]laintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Detrick*, 781 F. Supp. 3d at 622, quoting *Wall v. Mich. Rental*, 852 F.3d 492, 496

13

(6th Cir. 2017), citing *Amos v. Lampo Grp., LLC*, 2024 WL 3675601 *5 (6th Cir. Aug. 6, 2024); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

In alleging unfair and deceptive practices, Plaintiff does little more than restate portions of OCSPA. *See Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. Plaintiff asserts that she "thought that Stake had the approval and certification of the State of Ohio." Compl. ¶ 17, ECF No. 1, at PageID 3. However, she does not allege actions by Sweepsteaks Limited that would have reasonably led to this belief other than the Platform's availability in Ohio. *See id.* ¶¶ 95–97, PageID 19. This neither meets the heightened pleadings standards of Rule 9(b) nor the standard pleading requirements. *See Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555; *Detrick*, 781 F. Supp. 3d at 624. Plaintiff fails to allege with particularity the time or content of the alleged misrepresentation, the fraudulent scheme, defendant's fraudulent intent, and the resulting injury. As a non-exhaustive example, Plaintiff does not allege: when she used the Platform, if and when she made a purchase, if and when she played either Gold Coin or Stake Cash games, or the outcomes of those games. She also does not allege the resulting injury with particularity, only that she "lost." *See* Compl. ¶¶ 15, 17, ECF No. 1, at PageID 3.

Moreover, the Complaint asserts that "online gambling in any form is strictly prohibited by the State of Ohio." *Id.* ¶ 97, PageID 20. However, the Terms and Conditions, as quoted in the Complaint, prohibits play from "any other states . . . which, under the laws applicable to you, are legally precluded from playing the games," ¶ 96, PageID 19, and the webpage linked in the Complaint states, "SWEEPSTAKES ARE VOID WHERE PROHIBITED BY LAW. For detailed rules, see **terms of service**[,]" *see id.* ¶ 8 n.1, PageID 2 (as accessed May 14, 2026). This language provides notice to users that other states may be added to the list of excluded territories and that

14

the list may not be exhaustive. Further, Plaintiff agreed in the Terms and Conditions that it is her "sole responsibility to ensure that [her] Participation is lawful in [her] jurisdiction." § 4.2(b). This provision at the least provides users notice that they should check the laws in their own state. Accordingly, Plaintiff's belief that the Platform had any kind of formal licensure or certification from the state is both unreasonable and insufficient to support an allegation of deceptive practices under the OCSPA.

Additionally, the Terms and Conditions are clear that users are not granted "any right, title or interest in the Platform or Content." § 5.2. This license is limited and revocable for all aspects of the Platform, including Gold Coins and Stake Cash. *Id.* at §§ 5.1, 5.3. These Terms and Conditions, which the Complaint invokes, emphasize that there is no right to use the Platform including by redeeming prizes. Additionally, there can be no "obligation to pay for losses," Compl. ¶ 154, ECF No. 1, at PageID 29, under the facts as alleged by Plaintiff, because payment is for the purchase of Gold Coins and is made up-front before gameplay, *id.* ¶¶ 72, 76, PageID 14–15.

Also, under Plaintiff's own characterizations, advertisements for the Platform and Platform language reference "the opportunity to win" and "the chance to win." *See, e.g.*, *id.* ¶¶ 12, 62, 64. This "opportunity to win" and "chance to win" language is commonly employed by sweepstakes across product types and is recognizable as sweepstakes or giveaway language across business types. *See, e.g.*, *Harris v. Publishers Clearing House*, No. 3:15-CV-01528, 2016 WL 1366654, at *2 (M.D. Tenn. Apr. 6, 2016) (You must return your Official Entry-Order Document for your *opportunity* to win $25,000 cash!") (emphasis in original); *see also id.*, citing *Workman v. Publishers Clearing House*, 118 F.3d 457, 459 (6th Cir. 1997). Adopting, for this argument only, Plaintiff's characterizations, the language as alleged by Plaintiff is clear on its face that any economic benefit from winning is contingent on a subsequent event. *See id.* ¶ 154. Further, by

15

nature, "winning" is not instantaneous nor guaranteed in any gameplay setting.

Because Plaintiff has not plausibly alleged that Sweepsteaks Limited engaged in unfair or deceptive conduct, as weighed under the usual pleading standard or the heightened standard of Rule 9(b), the Court should dismiss her OCSPA claim.

### III. Plaintiff failed to plausibly allege "gambling" under Ohio law and thus cannot recover through declaratory judgement and disgorgement.

Plaintiff also seeks declaratory relief under 28 U.S.C. § 2201 *et seq.* via an order declaring the Platform is illegal gambling in Ohio and unconstitutional. However, Plaintiff has not plausibly alleged that Defendant's actions are illegal gambling under Ohio gaming law.

Ohio law prohibits many actions under its definition of "gambling," including operating "any game of chance conducted for profit or any scheme of chance." Ohio Rev. Code § 2915.02(A).[5] A "game of chance" is defined as "poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance." *Id.* at § 2915.01(D). A "scheme of chance" is also a term of art defined in relevant part to mean a "scheme in which a participant gives a valuable consideration for a chance to win a prize" either directly or indirectly. *Id.* at § 2915.01(C).[6]

Ohio law sets forth specific scenarios to determine if valuable consideration has been given. *Id.* "Valuable consideration is deemed to be paid for a chance to win a prize" in any of the following instances: if users do not engage at a minimum rate in the main product at a specific

---

[5] Plaintiff misstates the definition of "gambling" in Ohio and instead provides the definition of "bet" ("hazarding of anything of value upon the result of an event, undertaking, or contingency, but does not include a bona fide business risk."). Compl. ¶ 127, ECF No. 1, at PageID 25; Ohio Rev. Code § 2915.01(A). However, a bet alone is not prohibited by this statute, or Ohio law, and is instead a defined term of art used in Ohio Rev. Code § 2915.02 *et seq.*

[6] The definitions of "game of chance" and "scheme of chance" were changed from common law understandings to these statutory definitions in 1974. 2013 Ohio Op. Att'y Gen. No. 2013-012, 2-107 (Apr. 24, 2013). The current definition of "scheme of chance" was further amended in 2013. *Baldwin's Oh. Prac. Crim. L.* § 112:4 n.3 (3d ed. 2025). Accordingly, to the extent used, cases prior to 1974 which define or rely on the definitions of "game of chance" or "scheme of chance" and cases prior to 2013 which rely on the definition of "scheme of chance" should be read with this understanding.

location, if revenue thresholds are exceeded at a specific location, if entries can be purchased, and if certain play or prize-based activities take place on an electronic device. *Id.* An "electronic device" is a device owned or "possessed by any person conducting a scheme of chance" which "is capable of displaying information on a screen or other mechanism." *Id.*

As Plaintiff describes them, none of the Platform's games are gambling under Ohio law. If a user wins a game playing Gold Coins, they receive additional Gold Coins. Compl. ¶ 72, PageID 14. These Gold Coins can only be used for additional play—users can never redeem them for anything with real-world value. *See id.*; Terms and Conditions §§ 3(f), 7.2(a). Accordingly, no user can give money in "the hope of gain," so the games cannot be a game of chance under Ohio law. Users also cannot win a prize of value in the Gold Coin games, so the games are not schemes of chance either. In other words, the games offer nothing more than the "possibility of winning a greater or lesser amount of amusement." *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 882 (N.D. Ill. 2016), citing *People v. One Mech. Device*, 11 Ill. 2d 151, 155, 142 N.E.2d 98, 100 (1957); *see also Snyder*, 41 Ohio App. at 54–55. The games are therefore not gambling under Ohio law.

While users who play with Stake Cash may—and do—win additional Stake Cash redeemable for prizes with real-world value, that does not make the Stake Cash games gambling. Users are never required to pay or purchase anything to play Stake Cash Games. *See* Compl. ¶¶ 73, 88, ECF No. 1, at PageID 14, 18; Terms and Conditions § 8. Like any ordinary sweepstakes promotion, one way Stake Cash is given is for free with certain Gold Coin purchases. *Id.*; *see also In re Direct American Marketers, Inc.*, Assurance of Voluntary Compliance, Ohio Att'y Gen. PIF 10001626, 3 (Aug. 22, 1996) (recognizing purchase of a bona fide product as one of the elements of a valid sweepstakes). However, as insinuated by Plaintiff, users can receive Stake Cash via other free methods, including a mail-in method common to no-purchase sweepstakes. *See id.* at ¶¶ 73,

17

88. Accordingly, users who play Stake Cash games are not "giving anything of value" to play Stake Cash games users cannot purchase Stake Cash is freely given and users are not required to purchase anything to obtain Stake Cash. Users can play Stake Cash games completely for free. *See* Compl. ¶¶ 88, 132, ECF No. 1, at PageID 18, 25. Further, Stake Cash does not have value outside of the Platform, and Sweepsteaks Limited sets the value of Stake Cash with clear rules for redemption. *See id.* ¶¶ 76, 84; *see also* Terms and Conditions §§ 5.1, 5.2, 8.1. Therefore, the Stake Cash games are not games of chance under Ohio gambling law.

Further, since Stake Cash are only obtained for free, there is no valuable consideration paid to play in Stake Cash games. Likewise, no indirect valuable consideration is paid either. Money may be paid to purchase Gold Coin packages, and some of those packages are accompanied by free Stake Cash. *See* Compl. ¶ 76, ECF No. 1, at PageID 15 (showing that users who purchase a $30.00 Gold Coin package do not receive promotional Stake Cash). However, these purchases are not the only way to obtain free Stake Cash. *See id.* ¶ 88, PageID 17 (referring to the completely free write-in method of entry); *compare Freedom Concepts, Inc. v. Ohio Liquor Control Comm'n,* 2003-Ohio-4686 (10th Dist.) (finding that a physical machine the defendant claimed was a vending machine, which always required money to operate and had no free method of entry, was a gambling device). Further, the Platform's games are only available online, and Sweepsteaks Limited does not have a physical location in Ohio offering gameplay. *See id.* at ¶ 89.[7] Thus, the statute's location-based restrictions do not apply. Lastly, users do not play the games on devices owned by Sweepsteaks Limited but on their own personal devices. *See* Compl. ¶¶ 9, 17, 31, 89, ECF No. 1, at PageID 2–3, 5, 18. Thus, the games are not available on an "electronic device" under

---

[7] *See also Baldwin's Oh. Prac. Crim. L.* § 112:4 n.3 (3d ed. 2025) (noting that the law defining "scheme of chance" was further amended in 2013 to address internet sweepstakes cafes). These cafés housed physical machines owned by the proprietors of the business at physical locations. *See Cleveland v. Thorne,* 2013-Ohio-1029 ¶¶ 4, 46 (8th Dist.).

18

§ 2915.01(C). Accordingly, there is no valuable consideration paid, and the Stake Cash games are not schemes of chance. For these reasons, Stake Cash games are not gambling under Ohio law.

Excluding such no-purchase-necessary sweepstakes like the Platform from the state's definition of gambling is also consistent with longstanding Ohio case law because these sweepstakes lack the element of consideration. *See In re Direct American Marketers, Inc.*, Ohio Att'y Gen. PIF 10001626 at 3; 2013 Ohio Atty.Gen.Ops No. 2013-012, at 2-107. In *In re Direct American Marketers, Inc.*, the Ohio Attorney General stated that a sweepstakes or prize contest in Ohio is valid if (1) it "is used by the supplier to promote the sale of a bona fide good or service;" (2) "the consumer gives no payment or other consideration beyond the purchase of the good or service" if they make a purchase; and (3) the sweepstakes or prize contest complies with OCSPA and Ohio Rev. Code §§ 2915.01 *et seq.* and 3763.01 *et seq.* Here, under the facts as pled in the Complaint, the Platform meets all three of these elements. Gold Coins are a bona fide product providing amusement. The Stake Cash sweepstakes promote this bona fide product. If a person makes a purchase on the Platform, it goes toward Gold Coins only. Users could also choose not to make a purchase and to solely enter the sweepstakes. Lastly, as shown herein, Platform and its marketing do not contravene OCSPA nor the cited gambling statutes.

Even if, as alleged, Plaintiff herself largely ignores her Gold Coin balance, Compl. ¶¶ 72, 75, ECF No. 1, at PageID 14–15, and misses out on the amusement from playing the Gold Coin games, that allegation does not negate Ohio law finding that the social casino games are a bona fide product. *See Snyder*, 41 Ohio App. at 54–55. Sweepstakes are generally used to promote the brand's product and goodwill with users and potential users of the product. *See* 2013 Ohio Atty.Gen.Ops No. 2013-012, at 2-101, 2-108. However, no purchase is necessary to enter, and the Platform makes that clear. Compl. ¶ 8 n.1, ECF No. 1, at PageID 3. At the link provided by Plaintiff,

19

the bottom of the website page states, "NO PURCHASE NECESSARY to enter Sweepstakes. SWEEPSTAKES ARE VOID WHERE PROHIBITED BY LAW. For detailed rules, see **terms of service**" with a hyperlink to the terms. *Id.* (as accessed May 14, 2026). If Plaintiff only wanted to access the sweepstakes, she was not required to make a purchase.

The amusement from playing Gold Coins games is also one of the ways the Platform differs from an internet café, even working within the four corners of the Complaint. Internet cafés of the 2010s offered "network access time," an amorphous product freely obtainable elsewhere but purchased at these physical establishments. *See Cleveland v. Thorne*, 2013-Ohio-1029, ¶ 4 (8th Dist.). Moreover, not only were these cafés physical locations, but the owners of the establishments owned the physical terminals on which the games were played. *Id.* ¶ 46; *see* Ohio Rev. Code § 2915(C). For example, in *Thorne*, the finding that the terminals were slot machines, under Cleveland Codified Ordinances as opposed to the state gambling statutes, owned by the operator was crucial to the jury's finding of criminal liability and to the appellate court's affirmations of probable cause based on the police officer's sworn eye-witness testimony used to procure a warrant. *Id.* ¶¶ 46, 4. The same year *Thorne* was decided, the Ohio legislature codified the physical location and machine ownership requirements. *See* 2013 Sub.H.B. No. 7; *see also Baldwin's Oh. Prac. Crim. L.* § 112:4 n.3. Ohio House Bill 7 changed the definition of "scheme of chance" to address businesses operating at specific locations with machines or sweepstakes terminals owned by the operators of the physical locations. *See id.* Sweepsteaks Limited neither operates a physical location open to users in Ohio nor does it provide machines or devices to users for gameplay. Accordingly, with the facts as alleged in the Complaint, the Platform is legally distinct from an internet café.

20

**CONCLUSION**

Plaintiff's attempt to allege that Sweepsteaks Limited operates an illegal gambling platform fails. As the Complaint itself makes clear, Sweepsteaks Limited does not offer gambling. Users purchase virtual coins to play entertaining casino-style games in which they can win nothing but additional gameplay. Plaintiff got what she paid for and has not alleged a "loss" nor a "winner" in this simple transaction, unchanged by the outcome of any games she allegedly played. Sometimes, as a free bonus, users receive free sweepstakes entries that give them the chance to win prizes with real-world value. But no user has ever been required to—or even could—pay for those entries. The Platform's games are therefore not gambling. Nor did Sweepsteaks Limited engage in unfair conduct in marketing and operating the Platform. Users are free to take advantage of the numerous free methods to obtain both Gold Coins and Stake Cash. As Plaintiff acknowledges, users are never required to pay to play. When she did make a purchase, she received exactly what she expected when she purchased virtual coins from the Company: the opportunity to play entertaining casino-style games. For all these reasons, the Court should dismiss the Complaint in its entirety for failure to state a claim.

Dated: May 19, 2026

 s/ Jordan R. Briggs
Jordan R. Briggs (0106627)
*Trial Attorney*
jbriggs@ifrahlaw.com
A. Jeff Ifrah (*pro hac vice forthcoming*)
jeff@ifrahlaw.com
**Ifrah Law PLLC**
1717 Pennsylvania Ave NW, Suite 650
Washington, D.C. 20006
Tel: (202) 524-4140
Fax: (202) 524-4141

21

## <u>CERTIFICATE OF SERVICE</u>

I Hereby certify that on May 19, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

  s/ Jordan R. Briggs

*One of the Attorneys for*
*Defendant Sweepsteaks Limited*

1