**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| BRENDA KRIVATCH, on behalf of themselves and others similarly situated | Case No. 2:26-cv-00132-EAS-CMV |
| *Plaintiff,* | **District Judge Edmund A. Sargus** |
| v. | **Magistrate Judge Chelsey M. Vascura** |
| SWEEPSTEAKES LIMITED d/b/a Stake.us, | **ORAL ARGUMENT REQUESTED** |
| *Defendant.* | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
<u>ITS MOTION TO COMPEL ARBITRATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

   I.     Plaintiff has failed to raise a genuine dispute as to whether the parties
        agreed to arbitrate ..........................................................................................2

       A.  Defendant has established that the parties agreed to arbitrate ....................2

       B.  Plaintiff has not raised a genuine dispute of fact as to contract
           formation..................................................................................................3

   II.    The arbitration agreement is supported by consideration and is not illusory ....7

   III.   The arbitration agreement's delegation clause and Supreme Court precedent
       require the arbitrator, not the Court, to resolve Plaintiff's validity and
       enforceability challenges ...............................................................................10

       A.  Plaintiff's validity and enforceability challenges are for the arbitrator,
           not the Court ...........................................................................................10

       B.  Cyprus public policy provides no basis for refusing to enforce the
           arbitration agreement under the Convention...............................................13

       C.  Plaintiff has failed to establish that the delegation clause or arbitration
           agreement operate as a prospective waiver of her statutory rights ............15

   IV.   At most, the issues Plaintiff has raised require the Court to hold a bench
       trial, not deny the motion outright .................................................................15

CONCLUSION......................................................................................................................16

i

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. CareSource*,
  576 F.3d 551 (6th Cir. 2009) ........................................................................ 6

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ..................................................................................... 15

*Anderson v. Delta Funding Corp.*,
  316 F. Supp. 2d 554 (N.D. Ohio 2004) ...................................................... 8, 9

*Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*,
  556 F.3d 459 (6th Cir. 2009) ........................................................................ 2

*Ball v. Skillz Inc.*,
  No. 2:20-CV-888-JAD-BNW, 2020 WL 6685514 (D. Nev. Nov. 12, 2020) ................ 12

*Bautista v. Star Cruises*,
  396 F.3d 1289 (11th Cir. 2005) ................................................................. 2, 13

*Boykin v. Family Dollar Stores of Mich., LLC*,
  3 F.4th 832 (6th Cir. 2021) ................................................................... *passim*

*Boyle v. Sweepsteaks Limited*,
  No. 8:25-CV-302-JVS-ADS, 2025 WL 1674480 (C.D. Cal. May 19, 2025) ............... 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ................................................................................ 11, 12

*Burch v. P.J. Cheese, Inc.*,
  861 F.3d 1338 (11th Cir. 2017) ................................................................... 16

*Carter v. LL&B Headwater II, LP*,
  No. 2:16-CV-1162, 2017 WL 4270503 (S.D. Ohio Sept. 26, 2017) ........................... 12

*Coinbase, Inc. v. Suski*,
  602 U.S. 143 (2024) ..................................................................................... 11

*Composite Concepts Co., Inc. v. Berkenhoff*,
  2010-Ohio-2713 (8th Dist.) ...................................................................... 2, 13

*Cooper v. MRM Investment Co.*,
  367 F.3d 493 (6th Cir. 2004) ....................................................................... 10

*Cuyahoga Cnty. Hosps. v. Price*,
  64 Ohio App. 3d 410, 518 N.E.2d 1125 (8th Dist. 1989) .............................. 6

*Day v. Fortune Hi-Tech Mktg., Inc.*,
  536 F. App'x 600 (6th Cir. 2013) ................................................................. 8

*De Angelis v. Nolan Enterprises, Inc.*,
  No. 2:17-CV-926, 2018 WL 4566280 (S.D. Ohio. Sept. 14, 2018) ........................... 9

*DiMercurio v. Sphere Drake Ins. PLC*,
  202 F.3d 71 (1st Cir. 2000) ...................................................................................... 13

*Fazio v. Lehman Bros.*,
  340 F.3d 386 (6th Cir. 2003) ................................................................................. 7, 9

*Floss v. Ryan's Family Steak Houses, Inc.*,
  211 F.3d 306 (6th Cir. 2000) ...................................................................................... 9

*Goodykoontz v. Ohio*,
  No. 1:24-CV-145, 2025 WL 3453871 (S.D. Ohio Nov. 3, 2025) ................................. 5

*Helle v. Landmark*,
  15 Ohio App. 3d 1, 472 N.E.2d 765 (6th Dist. 1984) .............................................. 7, 9

*Hines v. Nat'l Ent. Grp., LLC*,
  140 F.4th 322 (6th Cir. 2025) ............................................................................... 10, 11

*In re Continental Capital Inv. Servs., Inc.*,
  439 B.R. 111 (Bankr. N.D. Ohio 2010) .................................................................... 12

*Jin v. Parsons Corp.*,
  966 F.3d 821 (6th Cir. 2020) .................................................................................... 16

*Kostelnik v. Helper*,
  2002-Ohio-2985 ..................................................................................................... 1, 8

*Kowalok v. ARB Gaming, LLC*,
  No. 4:25-CV-02161, 2026 WL 1113315 (N.D. Ohio Apr. 24, 2026) ......................... 11

*Kowalok v. ARB Gaming, LLC*,
  No. 4:25-CV-02161, 2026 WL 1374144 (N.D. Ohio May 15, 2026) .......................... 11

*Maag v. Love's Travel Stops & Country Stores, Inc.*,
  No. 2:23-cv-1039, 2023 WL 6318081 (S.D. Ohio Sept. 28, 2023) ............................ 16

*Masco Corp. v. Zurich Am. Ins. Co.*,
  382 F.3d 624 (6th Cir. 2004) ............................................................................... 12, 13

*McPherson v. Kelsey*,
  125 F.3d 989 (6th Cir. 1997) .................................................................................. 9, 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ................................................................................................ 15

*Nahra v. Honeywell, Inc.*,
  892 F. Supp. 962 (N.D. Ohio 1995) ............................................................................ 6

*Nationwide Life Ins. v. Myers*,
  67 Ohio App. 2d 98 (1980) ....................................................................................... 12

*Northgate Lincoln-Mercury Inc. v. Ford Motor Co.*,
  507 F. Supp. 3d 940 (S.D. Ohio 2020) .................................................................. 9, 15

iii

*O's Versatility Constr. LLC v. Cleveland Constr., Inc.*,
    792 F. Supp. 3d 815 (N.D. Ohio 2025) ............................................................... 7

*Page v. Gamestop Corp.*,
    No. 5:23-cv-01970, 2024 WL 1638989 (N.D. Ohio Apr. 16, 2024) ............................... 7

*Page v. Gamestop Corp.*,
    No. 24-3428, 2025 WL 637441 (6th Cir. Feb. 27, 2025) ............................................. 7

*Paknahad v. Diagnostic Lab'y of Okla., LLC*,
    No. CIV-21-773-PRW, 2023 WL 27919 (W.D. Okla. Jan. 3, 2023) ............................ 14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ....................................................................................... 13

*Redmond v. Big Sandy Furniture, Inc.*,
    2008-Ohio-6084 (4th Dist. 2008) ............................................................... 8, 9

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................................ 11

*Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*,
    712 F.2d 50 (3d Cir. 1983) .............................................................................. 13

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ....................................................................................... 14

*Smith v. Music City Homes, LLC*,
    No. 3:12-CV-0681, 2015 WL 752011 (M.D. Tenn. Feb. 23, 2015) .............................. 5

*Spanish Villa, LLC v. Certain Underwriters at Lloyd's London*,
    728 F. Supp. 3d 359 (E.D. La. 2024) .............................................................. 10

*Taglieri v. Monasky*,
    No. 1:15-CV-1052, 2018 WL 7575037 (N.D. Ohio Jan. 26, 2018) ............................ 14

*Traton News, LLC v. Traton Corp.*,
    914 F. Supp. 2d 901 (S.D. Ohio 2012) .............................................................. 8

*Traton News, LLC v. Traton Corp.*,
    528 F. App'x 525 (6th Cir. 2013) ...................................................................... 8

**Statutes**

9 U.S.C. § 4 .......................................................................................... 15, 16

**Treaties**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
    21 U.S.T. 2517, T.I.A.S. No. 6997, 1970 WL 104417 (Dec. 29, 1970) ................. *passim*

**Treatises**

1 Restatement 2d of Contracts § 34 ................................................................................... 1

**Other Authorities**

Blocking List, Nat'l Betting Auth.,
   nba.gov.cy/wp-content/uploads/BlockingListLatest.txt................................................. 14

Competences, Nat'l Betting Auth.,
   https://nba.gov.cy/en/the-authority/competences........................................................... 14

**INTRODUCTION**

Despite acknowledging that she created an account on the Stake.us platform, which she could not do without accepting the Terms, Plaintiff now argues that she can disregard her promise to arbitrate for three reasons, all of which fail.

First, she asserts that Sweepsteaks Limited has failed to carry its burden to prove the existence of the contract. To the contrary, Sweepsteaks Limited presented evidence that would "allow a trier of fact to find all required elements of a contract." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021). It presented the declaration of Jarrod Febbraio, Director of Stake, stating that the Stake.us platform required users to accept the Terms both when creating an account and again when Sweepsteaks Limited updated the Terms, and screenshots of Plaintiff's user account records confirming that Plaintiff accepted the Terms on May 17, 2023 and August 12, 2025. (Febbraio Decl. ¶¶ 7–11, 19–22, 28, Dkt. No. 20-2 at Page ID 111; *id.*, Ex. H, Dkt. No. 20-10.) Nothing more is required. *Boykin*, 3 F.4th at 839. Plaintiff's half-hearted attempts to create a factual dispute either do not address the facts relevant to contract formation or essentially concede that Sweepsteaks Limited is correct about many of them.

Second, Plaintiff argues that the Terms (and therefore the arbitration agreement) are illusory because Sweepsteaks Limited can unilaterally amend them without notice. In doing so, she asks the Court to ignore the undisputed fact that Sweepsteaks Limited performed. Sweepsteaks Limited's performance under the Terms establishes that "a contract enforceable as a bargain has been performed." *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 31 (quoting 1 Restatement 2d of Contracts § 34(2)). This performance provides adequate consideration both for the Terms and the arbitration agreement.

Third, Plaintiff invokes defenses to enforcement that are not cognizable under Article II(3) of the Convention or, to the extent they could be, fail on the merits. Public policy, whether that of

1

Cyprus or Ohio, does not provide a defense to enforcement under Article II(3). *See* And while "mistake" may be a cognizable defense, Plaintiff's mistake defense is a thinly veiled illegality defense, which is not cognizable under Article II(3). *Cf. Composite Concepts Co., Inc. v. Berkenhoff*, 2010-Ohio-2713, ¶ 36 (8th Dist.) (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005)) (rejecting defense to enforcement that could not be applied uniformly across all signatories to Convention). Regardless, if there was any mistake at all here, it was not a mistake as to the arbitration agreement, but the Terms. Accordingly, only the arbitrator may resolve this challenge.

As the Sixth Circuit has recognized, "there is nothing discretionary about Article II(3) of the Convention." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 469 (6th Cir. 2009). Because the Convention governs the parties' arbitration agreement and Plaintiff has failed to show that the agreement is null and void, the Court must refer Plaintiff's claims to arbitration. *See id.*

## **ARGUMENT**

**I.  Plaintiff has failed to raise a genuine dispute as to whether the parties agreed to arbitrate.**

Unable to deny that she was required to agree to the Terms and the arbitration agreement within them when she created an account and accessed the Stake.us platform, Plaintiff misconstrues both what is required to establish contract formation and Sweepsteaks Limited's evidence.

### **A.  Defendant has established that the parties agreed to arbitrate.**

Courts in the Sixth Circuit apply a standard akin to summary judgment in evaluating motions to compel arbitration. *See Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021). Sweepsteaks Limited therefore had the initial burden to present evidence that

would "allow a trier of fact to find all required elements of a contract (including [Plaintiff's] acceptance)." *Id.* at 839. In *Boykin*, the Sixth Circuit concluded that the defendant satisfied this burden by introducing (1) a declaration from a human-resources manager, "indicating that the company required employees to take the [company's] arbitration session and to read and accept the arbitration agreement" attached to the declaration and (2) a page from the company's internal records "suggesting that [the plaintiff] had completed the session on July 15, 2013." *Id.* Further supporting the Sixth Circuit's conclusion was the fact that the plaintiff—by bringing employment-claims—"obviously [did] not dispute that he continued working for [the company] thereafter." *Id.*

Like the defendant in *Boykin*, Sweepsteaks Limited has provided a declaration stating that the Stake.us platform required users, including Plaintiff, to accept the Terms when they created an account and on at least two subsequent dates. (*See* Febbraio Decl. ¶¶ 7–28, Dkt. No. 20-2 Page ID 111–14). Defendant has also submitted its internal records showing that on May 17, 2023 and August 12, 2025, Plaintiff accepted updated versions of the Terms by scrolling through the Terms in their entirety and checking a box manifesting her assent to those versions of the Terms. (*See* Febbraio Decl., Ex. G, Dkt. No. 20-9 Page ID 305, Ex. H, Dkt. No. 20-10, Page ID 307.) Nothing more is required to allow a trier of fact to "find all required elements of a contract," including Plaintiff's acceptance. *Boykin*, 3 F.4th at 839.

### B. Plaintiff has not raised a genuine dispute of fact as to contract formation.

Because Sweepsteaks Limited met its initial burden, Plaintiff must establish a "genuine" dispute as to whether she accepted the Terms. She has not done so.

To start, Plaintiff is simply wrong that Sweepsteaks Limited has failed to submit "any evidence" regarding the process by which Plaintiff created her account. (Opp. at 7, Dkt. No. 29 at Page ID 425.) As noted above, the declaration could not be clearer: As Mr. Febbraio states in his declaration, when Plaintiff created her account on December 16, 2022, all users were required to

"affirmatively confirm that they agreed to and accepted the [Terms] by checking a box," which appeared next to a statement notifying the user that they indicated that they had "read and acknowledge[d] the Terms & Conditions." (Febbraio Decl. ¶¶ 9–10, Dkt. No. 20-2 at Page ID 111.) Mr. Febbraio further states that the phrase "Terms & Conditions" was hyperlinked in distinctly colored text and that clicking the hyperlink would display the Terms in their entirety. (*Id.* ¶ 10, Dkt. No. 20-2 at Page ID 111.) Finally, Mr. Febbraio submitted as an exhibit to his declaration the exact Terms that would have appeared had Plaintiff clicked the hyperlink while registering. (*See id.*, Ex. A, Dkt. No. 20-3.) What's more, Plaintiff's own evidence confirms Mr. Febbraio's statements. Plaintiff notes that she, like any other user, could not access the Platform without setting up an account and creating a username and password. (Declaration of Brenda Krivatch ("Krivatch Decl.") ¶¶ 4–7, Dkt. No. 29-1 at Page ID 441–42.)

Then, having no real answer to the evidence showing that Plaintiff twice accepted updated versions of the Terms, Plaintiff misreads the Terms and the evidence in an effort to manufacture inconsistencies in the evidence that do not exist. Take Plaintiff's argument that Sweepsteaks Limited's evidence of notice contradicts Terms section 28.2, which purportedly "confirm[s] that no notice [of changes] will be given." (Opp. at 8, Dkt. No. 29 at Page ID 426 (citing Febbraio Decl. Ex. E, § 28.2, Dkt. No. 20-7 at Page ID 264). Of course, it says no such thing. Instead, Section 28.2 states that "[a]ny amendments will be published on the Platform . . ." (Febbraio Decl., Ex. E § 28.2, Dkt. No. 20-7 at Page ID 264.) Neither section 28.2 nor any other Terms provision states that Defendant will never provide notice. That Sweepsteaks Limited did in fact provide notice—and the opportunity to reject the amendments—at least twice does not contradict the Terms.

4

Plaintiff's other purported "contradiction" is even less persuasive. Sweepsteaks Limited's evidence is clear, a new version of the Terms was created on May 15, 2023. (Febbraio Decl., Ex. H, Dkt. No. 20-10 at Page ID 307.) On May 17, 2023, the Platform displayed the mandatory acceptance window to Plaintiff, and she assented to the new version of the Terms after scrolling through those Terms in their entirety (*Id.*; Febbraio Decl. ¶¶ 19–21, Dkt. No. 20-2 at Page ID 113.) Plaintiff latches on what appears to be—at most—a scrivener's error: Mr. Febbraio states that Plaintiff completed this process "on or around May 15, 2023," (Febbraio Decl. ¶ 21, Dkt. No. 20-2 at Page ID 113; *see* Opp. at 8, Dkt. No. 29 at Page ID 426), rather than May 17, 2023. Contrary to Plaintiff's assertion, the declaration and exhibit do not contradict each other: May 17, 2023 is certainly "on or around May 15, 2023." *Cf. Smith v. Music City Homes, LLC*, No. 3:12-CV-0681, 2015 WL 752011, at *11 (M.D. Tenn. Feb. 23, 2015) (relying on declaration stating that defendant was aware of facts on or about January 2009 to conclude that counterclaims were barred by statute of limitations).[1] But even if this discrepancy did amount to a true contradiction, the obvious scrivener's error does not raise a genuine dispute of fact—particularly here where Plaintiff does not expressly deny that she completed this process. *See e.g.*, *Goodykoontz v. Ohio*, No. 1:24-CV-145, 2025 WL 3453871, at *3 n.6, 6–8 (S.D. Ohio Nov. 3, 2025) (unrebutted declaration established defendant was entitled to summary judgment despite scrivener's error in declaration suggesting declarant investigated issue in September 2025 rather than September 2023).

Finally, the Court should reject Plaintiff's feeble attempt to create an issue of fact by asserting that she "did not know or was conspicuously notified [sic] that there were arbitration or delegation clauses in the terms and conditions" and that she "never received notice about" the

---

[1] Plaintiff herself uses a similar formulation in her own declaration, stating that "[i]n or about 2022, I created a Stake.us account." (Krivatch Decl. ¶ 7, Dkt. No. 29-1 at Page ID 442.)

amendments. (Krivatch Decl. ¶¶ 11–12, Dkt. No. 29-1 at Page ID 442.) Neither of these assertions create a genuine issue of fact.

Starting with the purported lack of notice at account-registration, Plaintiff does not dispute that she had adequate notice of the Terms, which is all that is required to establish contract formation. Plaintiff does not deny that the registration screen appeared as Mr. Febbraio describes it or that she checked a box indicating that she had read and acknowledged the Terms. At most, then, Plaintiff's statement establishes that despite checking that box, she did not in fact read the Terms. But that does not mean she did not have adequate notice of the Terms' contents. Plaintiff's failure to read the Terms—which she does not dispute were made available to her by hyperlink— does not free her from her obligations under the Terms. *See Nahra v. Honeywell, Inc.*, 892 F. Supp. 962, n.4 (N.D. Ohio 1995) (citing *Cuyahoga Cnty. Hosps. v. Price*, 64 Ohio App. 3d 410, 416, 518 N.E.2d 1125 (8th Dist. 1989)) ("[Plaintiff's] failure to read the contract [she] signed cannot be raised to show the absence of a true agreement.").

Plaintiff's statement that she never received notice that Sweepsteaks Limited amended the Terms sidesteps the relevant question. Her carefully crafted statement does not directly challenge Sweepsteaks Limited's evidence that she completed process required to accept the May 2023 and August 2025 versions of the Terms. (*See* Krivatch Decl. ¶ 12, Dkt. No. 29-1 at Page ID 442.) While an "unequivocal denial" of the relevant fact may sometimes establish a genuine dispute of fact, a conclusory statement "unadorned with supporting facts [is] insufficient to establish a factual dispute" under the summary judgment standard. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). That is all Plaintiff offers here. She does not deny that the Platform required her to complete the mandatory acceptance window process described in Mr. Febbraio's declaration on either May 17, 2023 or August 12, 2025. (*See* Krivatch Decl. ¶ 12, Dkt. No. 29-1 at Page ID 442.)

She does not deny that that process required her to scroll through the Terms in their entirety before accessing the Platform. (*See id.*) And she does not deny that she could not have accessed the Platform on or after those dates without having done so. (*See id.*) Plaintiff's denial that she received notice of changes—whether unequivocal or not—is not specific enough to establish a genuine factual dispute. *Cf. Boykin*, 3 F.4th at 842 (plaintiff's denial that he received notice of arbitration agreement created genuine factual dispute where defendant failed to identify what else plaintiff should have said).

Moreover, Plaintiff's declaration establishes that she is estopped by conduct from denying the existence of a contract. Because Plaintiff acknowledges that she created a Platform account, made purchases under the Terms governing that account, and played the Platform's games, she cannot now "self-servingly reject one specific provision" of the Terms—that is, the arbitration agreement. *Page v. Gamestop Corp.*, No. 5:23-cv-01970, 2024 WL 1638989, at *6 (N.D. Ohio Apr. 16, 2024), *aff'd*, No. 24-3428, 2025 WL 637441 (6th Cir. Feb. 27, 2025) (unpublished). A rational trier of fact would find that Plaintiff's repeated use of her account reflects her desire to be bound by the Terms, not renounce them. *See id.*

## II.     The arbitration agreement is supported by consideration and is not illusory.

In asserting that the arbitration agreement is illusory because it lacks mutuality of obligation, Plaintiff misstates Ohio contract law. The "mutuality" doctrine requires only a "*quid pro quo*"; once the "requirement of consideration is met, there is no additional requirement of mutuality of obligation." *Helle v. Landmark*, 15 Ohio App. 3d 1, 12–13, 472 N.E.2d 765 (6th Dist. 1984). When a "promisee's performance is executed, enforceable obligations arise without more." *Id.* at 12. And where, as here, the contract as a whole is supported by consideration, Ohio law does not require separate consideration for the arbitration provision. *See O's Versatility Constr. LLC v. Cleveland Constr., Inc.*, 792 F. Supp. 3d 815, 826 (N.D. Ohio 2025); *compare Fazio*

7

Case: 2:26-cv-00132-EAS-CMV Doc #: 31 Filed: 07/17/26 Page: 14 of 24  PAGEID #: 460

*v. Lehman Bros.*, 340 F.3d 386, 396–97 (6th Cir. 2003) (mutuality of obligation is satisfied as to arbitration clause where underlying contract supported by consideration) & *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 566 (N.D. Ohio 2004) (same), *with Day v. Fortune Hi-Tehck Mktg., Inc.*, 536 F. App'x 600, 605 (6th Cir. 2013) (defendant's performance did not eliminate mutuality requirement under Kentucky law).

Because the contract containing the arbitration clause is supported by adequate consideration, Plaintiff's illusory contract challenge fails under Ohio law. Plaintiff cannot assert a total lack of consideration because, as her complaint and declaration make clear, she accessed the Stake.us platform under the license Sweepsteaks Limited granted pursuant to the Terms. (*See* Compl. ¶ 17, Dkt. No. 1 at Page ID 3; Krivatch Decl. ¶¶ 7–10, Dkt. No. 29-1 at Page ID 442; Terms § 5, Dkt. No. 20-7 at Page ID 236.) Plaintiff received the benefits of the Terms when she created her account and played games on the Platform. *See Anderson*, 316 F. Supp. at 566; *see also Traton News, LLC v. Traton Corp.*, 914 F. Supp. 2d 901, 910 (S.D. Ohio 2012), *aff'd in part*, 528 F. App'x 525 (6th Cir. 2013) (consideration exists where website visitor obtained a benefit from using website). Accordingly, it "cannot be said that the underlying transaction lacked consideration." *Anderson*, 316 F. Supp. at 566; *see Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 31 ("Part performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been performed."). As a result, the arbitration agreement is likewise supported by consideration and Plaintiff's illusory-contract argument fails.

Plaintiff's authorities further illustrate this point. In *Redmond v. Big Sandy Furniture, Inc.*, 2008-Ohio-6084 (4th Dist. 2008), for example, the court considered an arbitration agreement that was not part of a larger contract like the arbitration agreement here, but a standalone "arbitration plan" supported only by the employee's and employer's ostensibly mutual promises to resolve

8

employment-related disputes through arbitration. *See Redmond*, 2008-Ohio-6084, ¶ 5, 13. In the absence of any other consideration, mutuality was required to make the agreement binding. *See id.*; *cf. Fazio*, 240 F.3d at 396–97 (mutuality not required if underlying contract supported by consideration); *Helle*, 15 Ohio App. 3d at 776–77 (same). Plaintiff's reliance on *De Angelis v. Nolan Enterprises, Inc.*, No. 2:17-CV-926, 2018 WL 4566280, at *4 (S.D. Ohio. Sept. 14, 2018), fails for the same reason. As the *De Angelis* court noted, mutuality of obligation is required when a contract is "based on reciprocal promises." *Id.* at *4. The *De Angelis* court did not address the other forms of consideration supporting the contract as a whole. *See De Angelis*, 2018 WL 4566280, at *4.[2]

Similarly, in *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000), the Sixth Circuit considered an agreement between the defendant's prospective employee and a dispute resolution provider. In the arbitration agreement, the provider "agree[d] to provide an arbitration forum in exchange for the employee's agreement to submit any dispute with his potential employer to arbitration" with the provider. *Id.* at 309. The agreement further gave the provider the "unlimited right" to modify the relevant arbitration rules "without the employee's consent." *Id.* at 310. The only consideration the provider offered was its "promise to provide an arbitral forum," meaning its "unfettered discretion" to "choose the nature of its performance" rendered its promise illusory. *Id.* at 315–16. Here, however, Sweepsteaks Limited has provided more than a promise to arbitrate disputes: it has provided Plaintiff access to the Platform, eliminating the requirement of mutuality of obligation. *See Anderson*, 316 F. Supp. at 566.

---

[2] The defendant in *De Angelis* appears to have only raised this issue in a footnote to its reply in support of its motion to compel arbitration. *See* Reply in Support of Defendant's Motion to Compel Arbitration and Dismiss Filed January 22, 2018, *De Angelis v. Nolan Enterprises, Inc.*, No. 2:17-cv-00926-ALM-EPD, Dkt. No. 47 at Page ID 375 (S.D. Ohio July 10, 2018). It is unsurprising, then, that the *De Angelis* court did not consider this argument. *See Northgate Lincoln-Mercury Inc. v. Ford Motor Co.*, 507 F. Supp. 3d 940, 947 (S.D. Ohio 2020) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (concluding defendant waived argument presented in a two-sentence footnote).

Because Plaintiff has not, and cannot, establish that the Terms, and therefore the arbitration agreement within them, lack consideration, her illusory contract challenge fails.

**III.    The arbitration agreement's delegation clause and Supreme Court precedent require the arbitrator, not the Court, to resolve Plaintiff's validity and enforceability challenges.**

Finally, Plaintiff attempts to avail herself of Article II(3)'s narrow "null and void" defense to enforcement. As the party opposing arbitration, Plaintiff bears the burden of establishing that the arbitration agreement is null and void. *See Cooper v. MRM Investment Co.*, 367 F.3d 493, 503 (6th Cir. 2004) (party opposing arbitration bears burden to establish basis for non-enforcement of arbitration agreement); *Spanish Villa, LLC v. Certain Underwriters at Lloyd's London*, 728 F. Supp. 3d 359, 366 (E.D. La. 2024) (same rule applies under Convention). Because she raises challenges that have been delegated to the arbitrator, are not cognizable under Article II(3) at the agreement-enforcement stage, or fail on the merits, she has failed to meet her burden and the Court must refer her claims to arbitration.

> **A. Plaintiff's validity and enforceability challenges are for the arbitrator, not the Court.**

Plaintiff makes no real effort to challenge the parties' agreement that the arbitrator, not the Court, would resolve challenges to the arbitration agreement's validity and enforceability. She instead argues that the delegation clause is not enforceable on grounds that apply only to the Terms as a whole, not the delegation clause specifically. (Opp. at 18–19, Dkt. No. 29 at Page ID 437.) This is fatal to her public policy and mistake challenges.

While a party resisting arbitration can challenge an arbitration agreement's or delegation clause's validity, they must do so by challenging the validity of those "precise agreement[s]." *Hines v. Nat'l Ent. Grp., LLC*, 140 F.4th 322, 333 (6th Cir. 2025). But the arbitrator and not the Court must resolve the challenges where the party opposing arbitration challenges only the contract as a

whole,. *Id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010)). That is all Plaintiff has done here.

To be sure, Plaintiff attempts to couch her challenge to the Terms as a challenge to the arbitration agreement and delegation clause. (Opp. at 18, Dkt. No. 29 at Page ID 436.) But the substance of Plaintiff's arguments does not apply "equally" to the Terms on the one hand and the arbitration agreement and delegation clause on the other. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024). The Court must therefore enforce the delegation clause and refer Plaintiff's validity and enforceability challenges to the arbitrator. *Hines*, 140 F.4th at 332 (rejecting plaintiff's attempt to rely on *Coinbase* where unconscionability argument did not apply equally to the contract as a whole).

Beginning with Plaintiff's public policy argument, Plaintiff does not even attempt to explain how Cyprus' Betting Law has anything to say about the arbitration agreement, let alone the delegation clause. Instead, she muddies the waters, asserting (without supporting Cypriot authority) that the Betting Law makes the "contracts through which" Sweepsteaks Limited offers the Platform "illegal." (Opp. at 19, Dkt. No. 29 at Page ID 437.) But Sweepsteaks Limited offers the Platform through the Terms, not the arbitration agreement or delegation clause. As federal courts in Ohio and around the country have recognized in rejecting variations on this same argument, the Supreme Court's decision in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) therefore forecloses this challenge. *See Buckeye*, 546 U.S. at 446 (rejecting Florida Supreme Court's conclusion that arbitration agreement's enforceability turned on Florida public policy and contract law); *see e.g.*, *Kowalok v. ARB Gaming, LLC*, No. 4:25-CV-02161, 2026 WL 1113315, at *4–5 (N.D. Ohio Apr. 24, 2026), *rept. and recommendation adopted*, 2026 WL 1374144 (N.D. Ohio May 15, 2026) (applying *Buckeye* and granting motion to compel arbitration

11

where plaintiff's allegations that defendant operated illegal online casino "permeate[d]" complaint); *Boyle v. Sweepsteaks Limited*, No. 8:25-CV-302-JVS-ADS, 2025 WL 1674480, at *5–6 (C.D. Cal. May 19, 2025) (applying *Buckeye* and granting motion to compel arbitration where illegality of Sweepsteaks Limited's platform permeated complaint); *Ball v. Skillz Inc.*, No. 2:20-CV-888-JAD-BNW, 2020 WL 6685514, at *5 (D. Nev. Nov. 12, 2020) (applying *Buckeye* and granting motion to compel arbitration while rejecting plaintiffs attempt to couch illegality challenge as one specific to arbitration agreement).

Plaintiff's mistake challenge fares no better. As an initial matter, Plaintiff does not assert a mistake of fact. Plaintiff does not suggest she did not understand the facts—how the platform worked—but their legal effect—whether how the platform worked complied with Ohio law. *See In re Continental Capital Inv. Servs., Inc.*, 439 B.R. 111, 123 (Bankr. N.D. Ohio 2010) (quoting *Nationwide Life Ins. v. Myers*, 67 Ohio App. 2d 98, 103–03 (1980)). To the extent there was any "mistake" at all, it would not provide a defense to enforcement under the Convention or otherwise. *See Carter v. LL&B Headwater II, LP*, No. 2:16-CV-1162, 2017 WL 4270503, at *3 (S.D. Ohio Sept. 26, 2017) (noting that "[t]o be cognizable, mutual mistake must be based on a mistake of fact, rather than a mistake of law," and concluding that a mistake as to "legal status" was one of law, not fact).

But even assuming Plaintiff's alleged mistake of law were a cognizable defense, that would only get her so far. She must still show that the mistake made the delegation clause or arbitration agreement—not the Terms as a whole—null and void. *See Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 628–30 (6th Cir. 2004) (mutual mistake allows court to deny motion to compel arbitration only where the mistake goes directly to the agreement to arbitrate); *see also* Convention, art. II(3) (court must refer parties to arbitration unless agreement to arbitrate is null and void). But

12

as Plaintiff acknowledges, her "mistake" goes to the Terms as a whole: absent her purported mistake, she "would not have enrolled in Stake's services," (Opp. at 19, Dkt. No. 29 at Page ID 437), that is, registered and accepted the Terms. Because her allegation of mistake concerns the legality of the platform and the Terms, not the arbitration agreement itself, Supreme Court and Sixth Circuit precedent foreclose her mistake challenge. *Masco Corp.*, 382 F.3d at 629–30 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–06 (1967)).

### B. Cyprus public policy provides no basis for refusing to enforce the arbitration agreement under the Convention.

Whatever Plaintiff may say about the public policy of Cyprus, it has no bearing on this Court's obligation to enforce the arbitration agreement. As an initial matter, Plaintiff misstates the scope of the Convention's null-and-void clause. The consensus among federal Courts of Appeal is that the null-and-void clause in Article II(3) of the Convention must be interpreted narrowly to "encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) (quoting *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000)); *accord Composite Concepts Co., Inc. v. Berkenhoff*, 2010-Ohio-2713, ¶ 36 (12th Dist.) (unconscionability defense not cognizable under Article II(3) because it cannot be applied neutrally).

But even if the Court were to adopt the outlier position that "public policy" is a cognizable defense under Article II(3), Plaintiff's argument would fail because the relevant policy is that of the United States, not Cyprus. In the sole case Plaintiff cites on this point, the Third Circuit recognized as much, concluding that "[t]he forum law implicitly referenced in Article II section 3 is the law of the United States . . . ." *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 54 (3d Cir. 1983). Plaintiff makes no argument that enforcing the arbitration agreement would contravene the fundamental policies of the United

13

States. (*See* Opp. at 18–19, Dkt. No. 29 at Page ID 436–37.) Nor could she. United States "law favors enforcement of arbitration clauses." *Id.* (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974)).

Plaintiff's resort to purported Cypriot public policy has yet another hurdle it cannot clear: it fails on the merits for three reasons. First, Plaintiff simply assumes, but does not establish, that the Stake.us platform offers "betting" for the purposes of the Betting Law. (*See* Opp. at 18–19, Dkt. No. 29 at Page ID 436–37.) Second, Plaintiff does not even attempt to show that the Betting Law would apply to services, like Stake.us, offered only to participants outside the Republic of Cyprus. *See* Competences, Nat'l Betting Auth., https://nba.gov.cy/en/the-authority/competences (last visited July 10, 2026) ("The National Betting Authority (NBA) . . . is responsible for the regulation and supervision of betting activity within the Republic of Cyprus."); Terms § 2.1 ("The following are 'Excluded Territories': a) any country other than the continental United States of America and Hawaii ('US')[.]").[3] Third, Plaintiff fails to show that the Betting Law reflects the sort of public policy that could invalidate an arbitration agreement. Of course, the Betting Law reflects Cypriot law, but that alone does not establish Cypriot public policy. *See Paknahad v. Diagnostic Lab'y of Okla., LLC*, No. CIV-21-773-PRW, 2023 WL 27919, at *4–5 (W.D. Okla. Jan. 3, 2023) ("[N]ot every statute sets forth a mandate of public policy." (alteration in original)). Nor does she offer testimony from a qualified practitioner of Cyprus law. *See Taglieri v. Monasky*, No. 1:15-CV-1052, 2018 WL 7575037, at *2 (N.D. Ohio Jan. 26, 2018) ("[E]xpert testimony [under Rule 44.1] is the basic method by which foreign law is determined.").

---

[3] While Defendant does not allow users outside of the United States to access the platform, the NBA does not include Stake.us on its "blocking list," which identifies gambling websites that are illegal in Cyprus. *See* Blocking List, Nat'l Betting Auth., nba.gov.cy/wp-content/uploads/BlockingListLatest.txt (last visited July 10, 2026).

Accordingly, Plaintiff has failed to meet her burden of establishing that public policy—whether that of Cyprus or the United States—renders the arbitration agreement null and void.

**C. Plaintiff has failed to establish that the delegation clause or arbitration agreement operates as a prospective waiver of her statutory rights.**

Plaintiff argues that the Court should refuse to enforce the arbitration agreement because it would limit her statutory rights. (Opp. at 19, Dkt. No. 29 at Page ID 437.) This appears to be a reference to what is sometimes called the "prospective waiver" or "effective vindication" exception to the FAA. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). This exception "finds its origin in the desire to prevent 'prospective waiver of a party's right to pursue statutory remedies.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). To operate as an impermissible prospective waiver, the arbitration agreement must "forbid" a party from asserting a statutory right. *See Italian Colors*, 570 U.S. at 236, 239.

Plaintiff's two-sentence prospective-waiver argument fails to identify a single statutory right that the arbitration agreement "forbids" Plaintiff from asserting. Instead, Plaintiff offers nothing more than a bare assertion that it "limit[s]" her statutory rights and is therefore unenforceable as against public policy. (Opp. at 19, Dkt. No. 29 at Page ID 437.) Because Plaintiff made no "effort at developed argumentation," *McPherson*, 125 F.3d at 995, the Court should reject this argument, *Northgate Lincoln-Mercury Inc.*, 507 F. Supp. 3d at 947 (deeming argument waived where party dedicated only two sentences to developing it).

**IV. At most, the issues Plaintiff has raised require the Court to hold a bench trial, not deny the motion outright.**

The Court should reject Plaintiff's attempt to create a factual dispute as to contract formation, but if it does not, the Court must not deny the motion outright. Instead, it must "proceed summarily to the trial" of the disputed fact questions. *Boykin*, 3 F.4th at 844 (quoting 9 U.S.C. §

15

4). Accordingly, if the Court identifies a genuine factual dispute, the Court must not deny the motion outright but must hold the motion—and all other motions and proceedings—in abeyance pending a summary trial on contract formation. *See Jin v. Parsons Corp.*, 966 F.3d 821, 828 (6th Cir. 2020) (establishing district court procedure for cases in which party opposing arbitration has established a genuine dispute of fact).

Moreover, because Plaintiff did not invoke her statutory right to a jury trial on the making of the arbitration agreement, (*see* Opp. at 1, Dkt. No. 29 at Page ID 419 (requesting oral argument but not jury trial)), she waived that right and the Court should hold a bench trial. *See Boykin*, 3 F.4th at 844 (citing *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1349–50 (11th Cir. 2017) (general jury demand in complaint does not satisfy requirements of 9 U.S.C. § 4)); *Maag v. Love's Travel Stops & Country Stores, Inc.*, No. 2:23-cv-1039, 2023 WL 6318081, at *2–3 (S.D. Ohio Sept. 28, 2023) (adopting majority position that general jury demand does not invoke right to jury trial under 9 U.S.C. § 4).

Accordingly, if the Court concludes that Plaintiff has adequately put in issue "the making of the arbitration agreement" or her "failure, neglect, or refusal to perform" under it, 9 U.S.C. § 4, the Court must hold the motion in abeyance and proceed to a summary bench trial before resolving any other issues in this action, *see Jin*, 966 F.3d at 828.

## CONCLUSION

Plaintiff agreed to arbitrate not once, but three times. First when she created her account, then on May 17, 2023 when she accepted an updated version of the Terms, and again on August 12, 2025 when she accepted another updated version of the Terms. Each of her attempts to escape this promise fails. Sweepsteaks Limited carried its burden and Plaintiff failed to create a genuine dispute of fact as to her acceptance. Sweepsteaks Limited's undisputed performance under the Terms defeats Plaintiff's illusory-contract challenge. Finally, each of Plaintiff's validity and

16

enforceability challenges are for the arbitrator, not the Court, and in any case fail on the merits. The Court must therefore hold Plaintiff to her promise and refer her claims to binding, individual arbitration.

Dated: July 17, 2026

Respectfully submitted,

*/s/Jordan R. Briggs*
Jordan R. Briggs (0106627)
*Trial Attorney*

Kim Conroy (*pro hac vice*)
Robert W. Ward (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
jordan@ifrahlaw.com
kconroy@ifrahlaw.com
rward@ifrahlaw.com

*Attorneys for Defendant*

17

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

   s/ Jordan R. Briggs

*One of the Attorneys for*
*Defendant Sweepsteaks Limited*

1