**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION–COLUMBUS**

| | |
|---|---|
| BRENDA KRIVATCH, on behalf of themselves and others similarly situated,<br><br>　　　　Plaintiff.<br>　　v.<br><br>SWEEPSTEAKS LIMITED, d/b/a Stake.us<br><br>　　　　Defendant. | Case No. 2:26-cv-00132-EAS-CMV<br><br>Judge Edmund A. Sargus, Jr.<br><br>Magistrate Judge Chelsey M. Vascura |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

1

**INTRODUCTION**

Sweepsteaks Limited's Motion to Dismiss, ECF No. 21, and supporting memorandum, ECF No. 21-1, argues that Plaintiff has not sufficiently pled and cannot recover under the Ohio Loss Recovery Statute ("OLRS") Ohio Rev. Code § 3763.02 *et seq.*, the Ohio Consumer Sales Practice Act ("OCSPA") Ohio Rev. Code § 1345.01, nor in equity under Ohio gambling law. Plaintiff cannot recover under OLRS because she fails to plausibly allege a winner or a loss as determined by playing a game. Plaintiff cannot recover under the OCSPA because she fails to allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury. with particularity under the required heightened Rule 9(b) standard. Even under the usual *Ashcroft*/*Twombly* standard, Plaintiff's OCSPA claims primarily restate the elements of the claim and otherwise fall short of plausibility. Further, Plaintiff has not plausibly alleged that Defendant's actions are illegal gambling under Ohio law because Plaintiff, as alleged, made a purchase and received the product (Gold Coins) that she purchased.[1] The Stake Cash she alleges she received with the purchase are part of a no-purchase necessary sweepstakes to promote the sale of the Gold Coins.

Plaintiff's Opposition to the Motion to Dismiss ("Opp."), ECF No. 28, does not resolve these deficiencies and instead relies on unreasonable assumptions, case law interpreting fundamentally different statutes, whether that be from Ohio's history or out of state, and new allegations impermissibly raised.

---

[1] *But see* Mot. n.2, ECF No. 21-2 at PageID 318 (noting that Plaintiff does not actually allege she made a purchase, instead she only asserts the legal conclusion that she made a "wager" and the factual allegation that she "paid money or other things of value" to Sweepsteaks Limited).

Accordingly, the Court must grant Sweepsteaks Limited's Motion to Dismiss and dismiss all three of Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

I.     **The new allegations in Plaintiff's Opposition are impermissibly brought and should not be considered at this stage.**

When considering a motion to dismiss, the Court may only consider the allegations in the pleadings and must ignore new allegations made in the Plaintiff's response. *Waskul v. Washtenaw Cty. Community Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020), citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). As such, Plaintiff may not raise new claims or allegations in her Opposition. *Id.*; *see also Am. Steel City Industrial Leasing, Inc. v. Bloom Land Co., LLC*, 2022-Ohio-1004 at ¶ 28 (11th Dist.) ("It is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."), quoting *Hernandez v. Riggle*, 2016-Ohio-8032, ¶ 5, (7th Dist.), quoting *General Elec. Co. v. S & S Sales Co.,* No. 1:11CV00837, 2012 WL 2921566, *4 (N.D.Ohio July 17, 2012). Such claims or allegations are an attempt to amend the Complaint without leave and are impermissible in an Opposition to a Motion to Dismiss. *Id.* The Court may also disregard new facts alleged in an exhibit to the Opposition, as these allegations were also not made in the Complaint. *See Doe by & through Doe v. Currey Ingram Acad.*, 721 F.Supp.3d 682, 691 (M.D. Tenn. 2024) ("use of an extra-complaint document to oppose a motion to dismiss is *not* proper where its purpose is to inject entirely new factual matter that was not set forth in the complaint") (emphasis in original).

Here, Plaintiff has not submitted a motion to amend her Complaint. Instead, Plaintiff includes new factual allegations within her Opposition, including in her Declaration attached as Exhibit A to the Opposition. For example, in its Motion, Sweepsteaks Limited notes that Plaintiff

3

has not alleged when she used Stake.us (the "Platform") or if and when she made a purchase on the Platform. (Mot. ECF No. 21-2 at PageID 323.)[2] Plaintiff then attempted to cure these deficiencies without moving to amend the Complaint. (*See* Opp. Exh. A, ECF No. 28-1 at PageID 417.) Such attempt is impermissible, and the Court should ignore the new allegations in Exhibit A to the Opposition.

### A. New allegation as to lack of registration should be disregarded by the Court.

Plaintiff also newly raises in her Opposition the incorrect assertion that legal sweepstakes must be registered with the Attorney General. (Opp. ECF No. 28 at PageID 410.) The allegation in Plaintiff's Complaint that Sweepsteaks Limited is not "listed as an approved sweepstakes provider in Ohio," (Compl. ¶ 4, ECF No. 1 at PageID 2), does not impute a registration requirement. Complaint lacks any allegation as to any of the requirements for being listed as an approved sweepstakes provider, including the authority who keeps such a list or whether being on the list is a requirement to operate in the state or not. Accordingly, the Court should ignore this new allegation while considering the Motion.

Even so, the statement is inaccurate. Only specific sweepstakes, that is, internet cafés/sweepstakes which operate sweepstakes terminal devices at a sweepstakes terminal device facility, need to register with the Attorney General. Ohio Rev. Code § 2915.02(F) ("Any person desiring to conduct . . . sweepstakes with the use of a sweepstakes terminal device at a sweepstakes terminal device facility shall first register with the office of the attorney general"). Ohio Admin. Code § 109:9-1 more vaguely states that "sweepstakes" must apply to be registered but was authorized by and amplifies Ohio Rev. Code § 2915.02, which only requires sweepstakes on

---

[2] Even in her new declaration, Plaintiff does not allege *when* she made a purchase, which prevents Sweepsteaks Limited from presenting a full response to her claims in its Motion and Reply, since recovery under the OLRS is limited to the previous six months. (*See* Mot. ECF No. 21-2 at PageID 315, quoting Ohio Rev. Code § 3763.02.)

sweepstakes terminal devices at sweepstakes terminal device facilities be registered. Ohio Rev. Code § 2915.02(A)(6); *see also id.* § 109:9-1(2)(m) (referring to sweepstakes terminal devices). Further, in practice, the forms the Attorney General provides for registration are for internet cafés/sweepstakes terminal device facilities. *See* "Services for Internet Cafés/Sweepstakes" Ohio Att'y Gen., available at https://www.ohioattorneygeneral.gov/Business/Services-for-internet-cafes-sweepstakes (last accessed July 13, 2026).

### B. New allegations and legal theory as to "illegal gambling" are impermissible and should be disregarded by the Court.

Additionally, Plaintiff attempts to raise new allegations and legal theories to advance her declaratory judgment and disgorgement claims premised on illegal gambling. On this front, Plaintiff attempts to revise her Complaint by narrowing the scope of the potential class to remove people who did not engage with the free mail-in requests for entry. (*See* Opp. ECF No. 28 at PageID 409.) This revision is an attempt to change the legal theory underlying Plaintiff's claim so that she may ignore the no-purchase necessary nature of a sweepstakes. Plaintiff additionally adds in her Opposition the claim that even a game that uses chance and only awards amusement (i.e., as alleged, Gold Coins) would be illegal gambling. (*See* Opp. ECF No. 28 at PageID 409–10.) This allegation was not raised in the Complaint. Accordingly, both the revision and the new allegation should be disregarded by the Court in its consideration of the Motion.[3]

### II. Plaintiff cannot recover under the Ohio Loss Recovery Statute because she fails to plausibly allege a winner or a loss as determined by a game.

Plaintiff has failed to plausibly allege the elements required to recover under the Ohio Loss Recovery Statute. Plaintiff has not plausibly alleged that Sweepsteaks Limited is a "winner" nor that she "lost" anything nor that any "loss" was incurred "by playing a game." *See* Ohio Rev. Code

---

[3] Nevertheless, both the attempted revision and new allegation have been addressed in Section V.

§ 3763.02 *et seq.*, ("OLRS").[4] Plaintiff asserts that *Ohio Gambling Recovery, LLC v. Kalshi Inc.* somehow reduces the elements she must plead. (Opp. ECF No. 28 at PageID 397.) However, the court in *Kalshi* examined the third-party-plaintiff section (§ 3763.04) of the OLRS to determine that there was "no requirement that the individual gamblers be included as parties;" it did not truncate the required elements for alleged harmed parties seeking to recover on their own behalf under OLRS § 3762.02. *See Ohio Gambling Recovery, LLC v. Kalshi Inc.*, No. 4:25-CV-1573, 2026 WL 865788, at *8 (N.D.Ohio Mar. 30, 2026). Accordingly, to state a claim under OLRS § 3763.02, Plaintiff must allege a winner and a loss as a result of a game. Plaintiff fails to do so.

### A. Sweepsteaks Limited is not a "winner" under the OLRS.

Plaintiff has not plausibly alleged a "winner" under the OLRS. Instead, Plaintiff likens Sweepsteaks Limited to a casino operator. However, Sweepsteaks Limited is not the "House." A casino sells chips, which have a set value representative of money, that can then be converted back to chips at the casino-customer's discretion and wish. Here, once Gold Coins are purchased, they are non-refundable and cannot be redeemed for cash or anything else with real-world value, i.e., they "do not have any real money value." (Mot. Exh. A ECF No. 21-3 PageID 347.) Further, Sweepsteaks Limited does not make any more or less money dependent on the outcome of Gold Coin games because there is no risk that Sweepsteaks Limited will lose money spent on Gold Coins. *See In re Apple Inc.*, *App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1038 (N.D. Cal. 2025), citing *Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 923, 921, 337

---

[4] Plaintiff incorrectly asserts that *Burt v. Playtika* is not applicable where a platform also allows for prizes. (*See* Opp. ECF No. 28 at PageID 403–04.) *Burt v. Playtika*, 132 F.4th 398, 402 (6th Cir. 2025) affirms the lower court decision in four cases simultaneously, including two with "sweepstakes coins," without differentiating between the platforms with and without "sweepstakes coins." *See id.* at 401 n.1 (affirming district court's order for *Burt v. Playtika*; *Duckworth v. Yellow Soc. Interactive, Ltd.*, No. 25-5039; *Ewing v. VGW Holdings Ltd.*, No. 25-5040; and *Bean v. Aristocrat Leisure, Ltd.*, No. 25-5042); *see also Burt v. Playtika, Ltd.*, No. 4:23-CV-55, 2024 WL 4311649, at *2 (E.D. Tenn. Sept. 26, 2024), *aff'd on other grounds,* 132 F.4th 398 (6th Cir. 2025) (addressing by case number two cases that also have "sweepstakes coins," i.e., *Duckworth v. Yellow Soc. Interactive, Ltd.*, Case No. 4:23-cv-58 (E.D. Tenn. filed Dec. 13, 2023); *Ewing v. VGW Holdings Ltd.*, Case No. 4:23-cv-62 (E.D. Tenn. filed Dec. 19, 2023).

Ill. Dec. 67, 921 N.E.2d 1205 (2010). Even if users increase or decrease future sales based on the outcome of these games, any uncertainty of these *potential* future sales do not equate to the business risking its own money. *See Phillips v. Double Down Interactive* LLC, 173 F.Supp.3d 731, 740 (E.D. Ill. 2016). Additionally, unlike money spent on chips at a brick-and-mortar casino, the money from Gold Coins is not put at risk. *See e.g.*, *id.* ¶ 72, PageID 14. Accordingly, Sweepsteaks Limited is not a "winner" under OLRS.

### B. Plaintiff's purchase does not equate to a "loss" under the OLRS.

As alleged, Plaintiff could only purchase non-redeemable Gold Coins on the Platform. (*See* Compl. ¶ 76 fig, ECF No. 1, at PageID 15.) Plaintiff does not plausibly allege that she purchased Stake Cash. (*See* Compl. ¶ 73, at PageID 14.) Accordingly, Plaintiff did not suffer a "loss" under the OLRS by making a purchase on the Platform. Further, Plaintiff could not lose something she never had. Plaintiff had no "opportunity to withdraw [her] Stake Cash for [prizes,] (Opp. ECF No. 28 at PageID 403), unless and until she won one of the sweepstakes. Therefore, Plaintiff could not lose this opportunity either.

Throughout her Complaint and Opposition, Plaintiff analogizes Stake.us to other business models with other unique products, such as vending machines and internet cafes. However, when performing a gambling analysis, the Court must look to the specific operation of the product being offered and the related promotional sweepstakes. *See* 2013 Ohio Atty.Gen.Ops No. 2013-012, at 2-107 (concluding where payment is for a legitimate product, a related sweepstakes does not violate Ohio gambling law); *see also In re Direct American Marketers, Inc.*, Assurance of Voluntary Compliance, Ohio Att'y Gen. PIF 10001626, 3 (Aug. 22, 1996) (laying out the three elements for a sweepstakes in Ohio, including promotion of a "bona fide product"). At this stage of the proceedings, the Court must look to the facts as alleged by Plaintiff but need not presume

7

as true legal conclusions or conclusory allegations that restate the elements of a claim. *Bates*, 958 F.3d at 480. As alleged, Plaintiff has not shown a "loss" under the OLRS.

While interpreting a less detailed and now outdated earlier version of Ohio's gambling statute, the *Snyder* court found that receiving continuous play from an amusement device is a legitimate product. *See Snyder v. City of All.* 41 Ohio App. 48, 54–55, 179 N.E. 426, 428 (1931). The *Snyder* court then stated that where continuous play is a controlling factor, amusement should be "furnished [to] all patrons in the same quantity at the same cost . . . ." *Id.* at 55; 179 N.E. 429. Here, Gold Coins are available to all users for purchase at the same rate. (Compl. ¶ 76, ECF No. 1 at PageID 15.) Stake Cash is also freely given to users at the same rate, whether incidental to purchase or by another free method, such as by mail request. (*Id.*; *see also id.* at ¶ 88, PageID 18; Mot. ECF No. 21-1 at PageID 326.) As pled, this equal opportunity for Gold Coins and promotional Stake Cash meets even this outdated *Snyder* test.

C. **Plaintiff's purchase of virtual coins and use of those coins is not a loss incurred "by playing a game" under Ohio law and does not make Sweepsteaks Limited a counterparty to any game.**

In Ohio, a sweepstakes is used to promote the sale of a good or service. *See In re Direct American Marketers, Inc.*, Ohio Att'y Gen. PIF 10001626 at 3 (recognizing purchase of a bona fide product as one of the elements of a valid sweepstakes). It follows that fundamentally, a sweepstakes run by a business must be paid by the business. The key elements of a sweepstakes do not include how the prize is funded. *Id.* Rather, the elements ask whether a sweepstakes promotes the sale of a bona fide good, purchase is not necessary (and if a purchase is made, costs no more than the good), and complies with certain Ohio law. *Id.* Accordingly, paying out a sweepstakes does not make the business a counterparty to any "game," even where a game is used as the visual representation of a sweepstakes entry.

*Kater v. Churchill Downs Inc.*, which applies Washington statutes to games offered in Washington by another company, is neither precedent nor analogous on this point. *See* 886 F.3d 784, 786–7 (9th Cir. 2018) (citing Washington statutes at issue, including Wash. Rev. Code §§ 4.24.070 (Washington loss recovery statute) and 9.46.0285 (statutory definition of "thing of value"). The loss recovery statute at issue in *Kater*, differs from the Ohio statutes in many ways. For example, the Washington statute explicitly provides for recovery from "the proprietor" of a business. Wash. Rev. Code § 4.24.070. In contrast, a claim under OLRS requires the allegation of a winner and a loss as the result of a game. *See* Ohio Rev. Code § 3763.02. Washington gaming law also provides a statutory definition for a "thing of value," while Ohio gaming law does not.

The Ohio loss recovery statute is not analogous to the broader Washington statute and is instead more akin to the narrower Maryland statute. *See Kater* at 788–89, citing *Mason v. Mach. Zone, Inc.*, 851 F.3d 315 (4th Cir. 2017) (applying Maryland law). The Maryland statute limits recovery to those who lose money via gaming device. *Id.*, quoting *Mason* at 320, citing Md. Code Crim. Law § 12-110. The court in *Mason* found that the statute did not extend to virtual game resources usable only in the game. *Id.* Accordingly, the loss recovery statute did not allow plaintiff to recover the money she spent on virtual gold to use in the game. *Id.*; *Mason* at 319–20.

For these reasons, Plaintiff has failed to allege a "winner," a "loss," and a loss as a result of playing a game. Accordingly, Plaintiff's OLRS claim should be dismissed for failure to state a claim.

### III. Plaintiff's claims under the Ohio Consumer Sales Practices Act do not meet the heightened Rule 9(b) pleading standard.

"Rule 9(b) can apply to claims that are not strictly 'fraud' claims." *Detrick v. KCS Int'l Inc.*, 781 F. Supp. 3d 588, 619 (N.D.Ohio 2025), *reconsideration denied*, No. 5:24-CV-1154, 2025 WL 1697482 (N.D.Ohio June 17, 2025). Plaintiff asserts that fraud is not an element of her OCSPA

claim. (Opp. ECF No. 28 at PageID 406.) Despite the fact that Plaintiff herself invokes an allegation of fraud, (Compl. ¶ 111, ECF No. 1 at PageID 21), OCSPA claims need not allege fraud to trigger the heightened Rule 9(b) standard. *See Detrick* at 622. Instead, the allegations in the Complaint need only "sound in fraud.". *Id.* at 619, quoting *Kolominsky v. Root, Inc.*, 100 F.4th 675, 683 (6th Cir. 2024). Allegations "sound in fraud" where the claims "are premised on a unified course of fraudulent conduct." *Kolominsky* at 683, citing *Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).

To state a claim under the OCSPA, Plaintiff must plausibly allege that the business's actions were "false, material to consumers' purchasing decisions, and likely to mislead a reasonable consumer." *Barlow v. Gap, Inc.*, 2020-Ohio-4382, ¶ 27 (8th Dist.). Such claims, by nature, sound in fraud. *Detrick* at 622 ("fraud neatly overlaps with the cause of action the OCSPA creates"); *see also Durnell's RV Sales Inc. v. Beckler*, 2023-Ohio-3565, ¶ 40 (3rd Dist.), quoting *Anderson v. Discount Drug Mart, Inc.*, 2021-Ohio-693, ¶ 31 (8th Dist.). Accordingly, to properly plead an OCSPA claim under Rule 9(b), "the [P]laintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Detrick* at 622, quoting *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017), citing *Amos v. Lampo Grp., LLC*, 2024 WL 3675601, at *5 (6th Cir. Aug. 6, 2024); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

Here, Plaintiff must satisfy Rule 9(b)'s heightened pleading standard because her OCSPA claims sound in fraud on their face and by their nature. Plaintiff not only invokes fraud by name in the complaint, (Compl. ¶ 111, ECF No. 1 at PageID 21), but she also alleges that she relied on

10

"misrepresentations," (*id.* ¶ 151, at PageID 28). As in *Detrick*, these allegations necessitate the heightened Rule 9(b) pleading standard. *See Detrick* at 621–622.

In her Opposition, Plaintiff asserts that the pleading standard for a claim based on omission is less stringent than the Rule 9(b) standard. (Opp. ECF No. 28 at PageID 406–07.) Even if that were the case, Plaintiff does not allege mere omissions, she expressly refers to alleged "misrepresentations" explicitly in pleading her OCSPA claim. (*Compare* Compl. ¶ 151, ECF No. 1 at PageID 28 ("Defendant misrepresented or cause confusion or misunderstanding"), *with id.* ¶ 20 PageID 4 (asserting venue is proper because "a substantial part of the events or omissions . . . occurred within this District" not asserting specific omissions).) Regardless, Rule 9(b)'s heightened standard would still apply even if her OCSPA claim were based solely on alleged omissions. *See Ivanoff v. Walmart Inc.*, No. 1:20-cv-00896-JPH, 2025 WL 2207924, at *29 (S.D. Ohio Aug. 4, 2025), quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942 (N.D.Ohio 2009) (citation omitted); *id.* at *32 (finding Rule 9(b) applied to 23 state consumer protection laws, including the OCSPA). And under Rule 9(b), a fraud-by-omission claim cannot proceed "without a properly pleaded 'what' of the alleged omission." *Id.*, quoting *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) (citations omitted).

Here, Plaintiff's claims do not meet the heightened Rule 9(b) standard. Plaintiff fails to allege with particularity the time or content of the alleged misrepresentation, the fraudulent scheme, defendant's fraudulent intent, and the resulting injury. Plaintiff simply restates portions of the OCSPA and asserts that Sweepsteaks Limited's platform was available in Ohio. (Compl., ¶¶ 17, 95–97, PageID 3, 19.) In her Opposition, Plaintiff alleges that Sweepsteaks Limited blocked some states, apparently presuming because the product was not allowed as gambling in those states, but

chose to allow the platform in Ohio. (Opp. ECF No. 28 at PageID 407.) This is not a reasonable inference from the facts as pled. Instead of knowledge specific to Ohio law or some other factual allegation as to time, place, content, and/or as to intent, as is required under the Rule 9(b) standard, Plaintiff imputes malintent. Her claims are also devoid of particularity as to her resulting injury. Plaintiff newly alleges that she "purchased coins on Stake.us," and realleges that she "lost money or other valuable things playing games on Stake.us." (Opp. Exh. A, ¶¶ 9–10, ECF No. 28 at PageID 417.) Both statements lack particularity (for example, as to time or amount).

Plaintiff's claims also do not meet the usual plausibility pleading standard. *See Bruce v. Adams and Reese, LLP*, 168 F.4th 367, 375 (6th Cir. 2026), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff simply restates portions of the OCSPA and presents legal conclusions as allegations. (*See* Compl. ¶ 150, ECF No. 1 at PageID 28.) As to her claims regarding injury, Plaintiff's statements that she "lost money or other valuable things playing games on Stake.us," (Opp. Exh. A, ¶ 10, ECF No. 28 at PageID 417), is a legal conclusion restating the elements of her claim, not a sufficiently pled factual allegation. *See Bates*, 958 F.3d at 480. Similarly, Plaintiff's new allegation that she "purchased coins on Stake.us," (Opp. Exh. A, ¶ 9, ECF No. 28 at PageID 417), is not an allegation of an injury, only a purchase.

Accordingly, for the reasons in the Motion and herein, Plaintiff's allegations do not state a claim on which relief may be granted and must be dismissed.

## IV. Plaintiff misstates the elements of OCSPA claims required by *In re Porsche*, particularly as to the elements required for OCSPA class action pleadings.

In her Opposition, Plaintiff points to *In re Porsche Cars North America Inc.* to state that she ostensibly needs to plead fewer elements for an omission-based OCSPA claim, even under Rule 9(b). (Opp. ECF No. 28 at PageID 407, citing *In re Porsche Cars N. Am. Inc.*, 880 F.Supp.2d 801, 868 (S.D. Ohio 2012).) However, Plaintiff's portrayal of *In re Porsche* is too narrow. First,

the facts in *In re Porsche* are not comparable to the facts here. *In re Porsche* involved physical safety concerns, which the Southern District of Ohio found persuasive as a relevant omission. *See In re Porsche* at 871. Moreover, *In re Porsche* actually establishes additional elements for OCSPA claims brought as class actions. *Id.* at 868. For avoidance of doubt, Plaintiff has failed to satisfy these additional elements.

What *In re Porsche* more clearly establishes is that Plaintiffs may only bring class action claims under the OCSPA if the Plaintiff can additionally show that the defendant had sufficient notice at the time of the alleged acts that the conduct was deceptive or unconscionable. *Id.* If Plaintiff wishes "to proceed as a class" then "[t]he alleged conduct must be 'substantially similar' to an act or practice previously declared to be deceptive under the OCSPA. . . ." *Id.*, citing Ohio Rev. Code § 1345.09(B) and *Marrone v. Philip Morris USA, Inc.,* 2006–Ohio–2869 at ¶ 2; *see also* Ohio Rev. Code § 1345.09(B) (stating that if the act or practice was previously declared to be deceptive under the OCSPA, "the consumer may rescind the transaction or recover, but not in a class action"). Notice is only sufficient if, before the transaction, either (1) the Attorney General adopted a rule declaring the alleged violation as deceptive or unconscionable or (2) a court determined the alleged act or practice violated the OCSPA. *In re Porsche* at 868. Where a case is alleged as providing notice, it must be an Ohio state court case. *Id.* at 869–870, citing *Kline v. Mortgage Elec. Sec. Sys.,* No. 3:09–cv–408, 2010 WL 6298271, at *6 (S.D. Ohio Dec. 30, 2010).

Here, Plaintiff concedes in her Opposition that no authority has found Defendant's actions deceptive under the OCSPA to date. Plaintiff cites to *McKinney v. Microsoft Corp.* for the proposition that "there is no binding precedent on the issue and . . . no consistent decision among courts within the Southern District of Ohio." (Opp. ECF No. 28 at PageID 406, citing No. 1:10-CV-354, 2011 WL 13228141 at *15 (S.D. Ohio May 12, 2011)). Therefore, Plaintiff has conceded

13

that she cannot satisfy the OCSPA's notice requirement, and, as a result, the OCSPA claims may not be brought as a class action.

Further, as shown in Sweepsteaks Limited's Motion and in Section III above, Sweepsteaks Limited's practices do not violate the OCSPA. For example, the Attorney General publication cited by Plaintiff that is relevant to sweepstakes actually supports the Platform's promotional sweepstakes as a no-purchase necessary sweepstakes. (*See* Mot. ECF No. 21-1 at PageID 328, citing *In re Direct American Marketers, Inc.*, Ohio Att'y Gen. PIF 10001626 at 3 (Aug. 22, 1996) and 2013 Ohio Atty.Gen.Ops No. 2013-012, at 2-107.)[5]

Accordingly, *In re Porsche* does not support Plaintiff's contention; rather, it highlights that Plaintiff has failed to adequately plead her class action claims under OCSPA. Based on the case law relied upon and admissions in her Opposition and issues raised in the Motion, Plaintiff has identified that she has not provided notice under the requirements for OCSPA class action pleadings.

V. **Plaintiff failed to plausibly allege "gambling" under Ohio law and thus cannot recover through declaratory judgement and disgorgement.**

Plaintiff has not plausibly alleged that Defendant's actions are illegal gambling under Ohio gaming law. Plaintiff relies heavily on *Cleveland v. Thorne*, a case primarily upholding probable cause for a warrant under a Cleveland city ordinance for a sweepstakes game attached to internet access time. 2013-Ohio-1029, ¶ 48 (8th Dist.); (*see also* Mot. ECF No. 21-2, at PageID 329). Here, the product, Gold Coins and the amusement therefrom, are quite different from the internet access

---

[5] Again, for avoidance of doubt, the cases cited in the Complaint are also inapposite, as *Celebrezze*, Ohio Att'y Gen. PIF No. 10001056 (concerning *Celebrezze*), and *State ex rel. Montgomery* are pyramid-scheme cases turning on whether the "business associates" or "investors" are "consumers" under OCSPA. (*See* Compl. ¶ 160 ECF No. 1 at PageID 29–30, citing *State ex rel. Celebrezze v. Howard*, 77 Ohio App. 3d 387, 393, 602 N.E.2d 665, 669 (1991). and Ohio Att'y Gen. PIF No. 10001056 (concerning *Celebrezze*) and *State ex rel. Montgomery v. Purchase Plus Buyer's Grp., Inc.*, 2002-Ohio-2014.) Neither case nor the PIF mention a sweepstakes, and the pyramid-scheme "business" model is inapposite to a social casino with a sweepstakes. *Id.*

14

time in *Thorne*. Gold Coins can be used to play games and receive amusement, (*see* Compl. ¶¶ 72–73, ECF No. 1 at PageID 14), as opposed to internet access time which is amorphous and obtainable elsewhere. Further, the court in *Thorne* also emphasized the physical business aspects of the internet access cafes, including free food and drink and lounge areas. *Thorne* at ¶ 44. In this way, Stake.us is also dissimilar from the internet cafes in *Thorne*, since the company does not offer physical locations and cannot offer these physical incentives to keep playing.

Plaintiff's newly presented wish to represent class members who obtained Stake Cash as a promotion with a Gold Coin purchase and not through mail-in is a wish to engage only with the facts that Plaintiff finds favorable. (*See* Opp. ECF No. 28 at PageID 409.) *See also In re Direct American Marketers, Inc.*, Ohio Att'y Gen. PIF 10001626 at 3 (recognizing no-purchase necessary as one of the required elements of a valid sweepstakes). In the Complaint, Plaintiff defines the potential class as, "All persons in Ohio who have paid money or other things of value on Stake.us." (Compl. ¶ 114, ECF No. 1 at PageID 22.) This definition is not exclusive of persons who have received Stake Cash via the mail-in method.

Plaintiff further wishes to rely on case law applying antiquated versions of the state gambling laws to assert for the first time in her Opposition that even a game that does not offer a prize would be illegal. (*See* Opp. ECF No. 28 at PageID 409–10). However, the tests used in *Snyder* and in *Kraus v. City of Cleveland* apply a previous version of the Ohio gambling statute, one that is much stricter with less developed case law at the time of the opinions. *See Snyder*, 41 Ohio App. 48, 54–55; *Kraus v. City of Cleveland*, 135 Ohio St. 43, 47, 19 N.E.2d 159, 161 (1939). The gambling statutes applied therein prohibited "permit[ting] a game to be played for gain," *Kraus* at 44, which is a far cry from the detailed and nuanced protections in Ohio Rev. Code § 2915 today.

15

Additionally, here, as discussed above, Gold Coins meet even the *Snyder* test because they are available to all users for purchase at the same rate. *Snyder*, 41 Ohio App. at 54–55; (*see also* Compl. ¶ 76, ECF No. 1 at PageID 15.) Free Stake Cash is also given at the same rate. *Id.*; (*see also id.* at ¶ 88, PageID 18; Mot. ECF No. 21-1 at PageID 326.)

The purchase and use of Gold Coins is also permissible under the current statute. The current statute prohibits specific actions as illegal gambling and provides key definitions to be used in analyzing whether an act is illegal gambling or not. *See* Ohio Rev. Code § 2915.02(A). As stated in the Motion, A "game of chance" is defined as "poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance." *Id.* at § 2915.01(D). Here, Gold Coins do not have value off of the Platform and can only be used to play games that may give more Gold Coins. (*See* Compl. ¶ 72, ECF No. 28 at PageID 14.) Accordingly, the amusement that comes from engaging with the Gold Coins on the Platform is not from the purchase of Gold Coins, rather it is from *playing with* the Gold Coins. Therefore, the Gold Coins are not "anything of value" given in the "hope of gain" as determined by chance because every time a user uses Gold Coins on the Website, they are playing the Gold Coins games and receiving the desired amusement, regardless of the outcome of each individual game.

Thus, Plaintiff has not plausibly alleged "gambling" under Ohio law and cannot recover through declaratory judgement and disgorgement.

**VI.**     **Plaintiff has not made a motion to amend the Complaint nor provided a copy of a revised complaint and therefore should not be granted leave to file an amended complaint.**

A one-sentence request at the end of an Opposition to a Motion to Dismiss is not—and should not be construed as—a motion to amend. *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). In *Kuyat*, the plaintiff requested in pertinent part: "Alternatively, Plaintiffs request leave to amend the Complaint in the event that the Court finds that it falls short of the

applicable pleading standards in any respect." *Id.* Such throwaway language does not require the Court to "'freely give leave' to amend" under FRCP 15. *Id.* Additionally, a Plaintiff seeking to amend a complaint should attach a copy of the amended complaint to her motion to amend. *Id.*, citing *Shillman v. United States*, 221 F.3d 1336, 2000 WL 923761, at \*6 (6th Cir. 2000) (unpublished table decision). Plaintiff must give the Defendant and the Court sufficient notice as to the content of the amendment. *See Shillman* at \*6, citing *Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir.1993).

Here, Plaintiff's request that it be "leave to amend her Class Action Complaint" is even less substantive and more indefinite than the language in *Kuyat*. Further no proposed amended complaint is submitted, and Plaintiff's request makes no indication of the content of the proposed amendments. Accordingly, the Court should not grant Plaintiff's informal request to amend the Complaint.

## CONCLUSION

Plaintiff's renewed attempt to allege that Sweepsteaks Limited operates an illegal gambling platform again fails. Plaintiff fails to plausibly state a claim under the OLRS, the OCSPA, and Ohio gambling law. As the Complaint itself makes clear, Sweepsteaks Limited does not offer gambling, and the Opposition does not amend this deficiency. Even in its new factual allegations, which should be disregarded for the purpose of deciding this Motion, the Opposition falls short of the plausibility pleading standard. Plaintiff has not alleged a "loss" nor a "winner" in this simple transaction, nor that any such "loss" or "winner" is dependent upon the outcome of a game. Instead, Plaintiff paid for and received virtual coins to play entertaining casino-style games in which she can win nothing but additional gameplay. Plaintiff therefore has failed to state a claim under the OLRS.

17

Nor did Sweepsteaks Limited engage in unfair conduct in marketing and operating the platform. Users may obtain Gold Coins and Stake Cash freely and are never required to pay. Further, users can never pay for Stake Cash. When paying for Gold Coins, users receive what they have purchased. When Plaintiff herself made a purchase, she received exactly what she expected when she purchased virtual coins from the Company: the opportunity to play entertaining casino-style games. In addition to failing to plausibly allege a violation of OCSPA, Plaintiff does not meet the heightened pleading standard of Rule9(b) for claims that "sound in fraud." Accordingly, Plaintiff has failed to state a claim under the OCSPA.

Nor did Sweepsteaks Limited offer illegal gambling under Ohio law. Free promotional sweepstakes entries are sometimes given to users as a bonus. Plaintiff could never pay for an entry and is not entitled to any prize merely because she received an entry. The Platform's games are therefore not gambling under Ohio law.

Plaintiff has not cured these defects in her Opposition, nor has she appropriately moved to amend her Complaint. For all these reasons, the Court should not grant Plaintiff's request to amend her Complaint and should dismiss the Complaint in its entirety for failure to state a claim.

Dated: July 17, 2026

 /s/Jordan R. Briggs
Jordan R. Briggs (0106627)
*Trial Attorney*
jbriggs@ifrahlaw.com
Kim Conroy (*pro hac vice*)
kconroy@ifrahlaw.com
Robert W. Ward (*pro hac vice*)
rward@ifrahlaw.com
**Ifrah Law PLLC**
1717 Pennsylvania Ave NW, Suite 650
Washington, D.C. 20006
Tel: (202) 524-4140
Fax: (202) 524-4141

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

  s/ Jordan R. Briggs

*One of the Attorneys for*
*Defendant Sweepsteaks Limited*